R.A. HATCH CO., an Oregon corporation, and Robert A. Hatch, Plaintiffs,

v.

AMERICAN INSURANCE COMPANY, a New Jersey corporation, Defendant.

Civ. No. 89-1134-FR.

United States District Court, D. Oregon.

Jan. 16, 1990.

Kevin O'Connell, Christopher H. Kent, O'Connell & Goyak, Portland, Or., for plaintiffs.

James L. Knoll, Loren D. Podwill, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., for defendant.

## OPINION

FRYE, District Judge:

The matter before the court is the motion of defendant, American Insurance Company (American), for complete or partial summary judgment against the claims of plaintiffs, R.A. Hatch Co. (Hatch Co.) and Robert A. Hatch[1] (# 7).

## UNDISPUTED RELEVANT FACTS

American is a subsidiary of Fireman's Fund Insurance Company (Fireman's). In 1983, American issued a performance and payment construction bond relating to a joint venture of Hopsing Const. Co. (Hopsing) and Sauble Landscaping, Inc., dba Standard Paving (Standard Paving), for construction work relating to the Banfield

Interstate project (the Banfield project). Charles Trover is a principal of Standard Paving. The bond requires Hatch Co., Hatch and Suzanne Hatch, Hatch's ex-wife, to indemnify American for losses under the bond.

Standard Paving did not complete a portion of the concrete paving work on the Banfield project as agreed. Because of the uncompleted work and other problems, the joint venture incurred losses of approximately $880,000. As partners with Hopsing in this joint venture, Charles Trover and Standard Paving were liable for one-half of the losses, or $440,000. Additionally, Hopsing owed Standard Paving approximately $200,000 for equipment rental on the Banfield project. Subsequently, Hopsing assigned its interest in the joint venture to plaintiffs. At all material times, Robert Hatch was the principal shareholder of Hatch Co.

Standard Paving sued American in this court on the performance bond alleging nonpayment of the equipment rental in an action entitled *State of Oregon ex rel Sauble Landscaping, Inc.,* Civil No. 85–1931–LE (D.Or.) (the federal court action). American tendered its defense of the federal court action to Hatch Co. and to Robert Hatch as indemnitors on the bond, which tender was accepted. At about the same time, Hatch Co. filed an action for contribution in the Circuit Court of the State of Oregon for the County of Multnomah against Standard Paving and Charles Trover for losses incurred on the Banfield project in an action entitled *R.A. Hatch Co. v. Trover,* Case No. A8511–06973 (the state court action).

On April 2, 1986, Hatch Co. filed an amended complaint in the state court action which added Gina Trover, the wife of Charles Trover, as a defendant. The amended complaint also added a claim for relief alleging that Charles Trover had fraudulently transferred all of his assets to Gina Trover in order to conceal his assets from creditors.

---

**1.** American reserves the right to dispute the allegations of the complaint if this motion is denied in whole or part.

On June 26, 1987, after a trial to the court, the Honorable Edward Leavy, United States District Court Judge, found the defendants (American and another surety) liable to Standard Paving in the amount of $209,145.73, plus prejudgment interest and reasonable attorney fees.

Subsequently, in October of 1987, the parties to the state and federal court actions reached a settlement and both lawsuits were dismissed upon the stipulated motion of the parties in December, 1987. Pursuant to the settlement agreement, Standard Paving received at least $326,000 attributable to the federal court action, of which $100,000 was paid by Trover, who was a defendant in the state court action. Hatch and Hatch Co. contend that they were "forced" to accept this settlement, and that as a result their liability was increased by as much as $340,000.

The law firm of Allen, Kilmer, Schrader, Yazbeck and Chenowith (Allen, Kilmer) initially represented Standard Paving in the federal court action and in the state court action. In early 1986, Fireman's and American retained Allen, Kilmer to represent them with regard to bonds issued by Fireman's and American. With respect to the bond in this case, American retained Allen, Kilmer to monitor the litigation and the financial solvency of the Hatch parties. American required Hatch and Hatch Co. to make regular reports to Allen, Kilmer regarding the progress of the litigation and the financial condition of Hatch and Hatch Co.

After Standard Paving commenced the federal court action, the Hatch parties informed American that they intended to use funds recovered from Standard Paving and Trover in the state court action to pay any amounts owing to American in the federal court action. With this knowledge, Allen, Kilmer prepared two codicils to Gina Trover's will, the first dated March 7, 1986, and the second dated October 3, 1986, whereby a spendthrift trust was established for the benefit of Charles Trover. The intent in creating the spendthrift trust was to make Charles Trover judgment proof, since the terms of the trust allowed expenditures of funds to maintain the lifestyle of Charles Trover, but protected his expected inheritance from claims made against him by Hatch Co. and Hatch.

At the times that the codicils were prepared by Allen, Kilmer, it was common knowledge that Gina Trover had terminal cancer. On October 11, 1986, Gina Trover died and the spendthrift trust became effective.

As early as the Spring of 1986, Hatch had begun to question the conduct of Allen, Kilmer and American. In a letter to Allen, Kilmer and Fireman's dated April 3, 1986, Hatch's lawyer claimed that Allen, Kilmer had a conflict of interest arising from Allen, Kilmer's representation of American and of Fireman's in their pursuit of security on the Hatch Co. bonds while Allen, Kilmer was simultaneously representing clients who were making claims against the same bonds. Hatch's lawyer (Levi Smith) claimed that this conflict caused Allen, Kilmer to have confidential information about the Hatch parties that could be used against them by the Standard Paving parties. Smith warned that Fireman's (and thus American's) behavior could violate its duty of good faith to the Hatch parties.

In a letter dated July 21, 1987, Hatch expressed his intent to sue Fireman's and Allen, Kilmer and to file a complaint against Allen, Kilmer with the Oregon State Bar Association. On August 6, 1987, Hatch filed a complaint with the Oregon State Bar Association, alleging that the Allen, Kilmer firm had a conflict of interest that resulted in a financial detriment to Hatch and Hatch Co. Hatch complained that the Allen, Kilmer firm had used confidential information to benefit Standard Paving and the Trovers, and that the Allen, Kilmer firm had acted to make Charles Trover judgment proof. Hatch claimed that these acts increased Hatch's potential liability in the federal court action and decreased his potential return from Trover in the state court action.

Hatch filed a Chapter 7 bankruptcy petition on August 31, 1988 and was granted a discharge in bankruptcy in January, 1989. This action was filed in the Circuit Court of

the State of Oregon for the County of Multnomah on September 22, 1989 and was subsequently removed to federal court.

## APPLICABLE LAW

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). Where different inferences can be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir.1981).

## CONTENTIONS OF THE PARTIES

American contends that each of the three claims is barred by the applicable statute of limitations. American argues that the claims for negligence and breach of fiduciary duty are barred by the two-year limitation of O.R.S. 12.110(1), and that the claim denominated "breach of contract" does not in fact arise upon a contract, so that the applicable statute of limitations for this claim is also O.R.S. 12.110(1). American also argues that as a matter of law it did not breach the surety agreement. American moves, in the alternative, for partial summary judgment as to each of the claims in the complaint.

Hatch and Hatch Co. respond that the motion should be denied because 1) the bankruptcy of Hatch tolled the applicable statute of limitations pursuant to O.R.S.

12.210; 2) the claims did not accrue until October of 1987, at the earliest, less than two years before the complaint was filed; and 3) the claim for breach of contract is subject to the six-year statute of limitations of O.R.S. 12.080. Hatch and Hatch Co. do not dispute that the claims for negligence and breach of fiduciary duty are subject to a two-year statute of limitations.

## ANALYSIS AND RULING

### 1. *Effect of Hatch's Bankruptcy*

Hatch contends that the applicable statutes of limitations were tolled for the four to five months between the filing of the Chapter 7 bankruptcy petition on August 31, 1988 and his discharge in bankruptcy in January, 1989.[2] Hatch relies on O.R.S. 12.210, which provides:

**Suspension by injunction or prohibition of statute.** When the commencement of an action is stayed by injunction or a statutory prohibition, the time of the continuance of the injunction or prohibition shall not be a part of the time limited for the commencement of the action.

Hatch argues that the tolling provision applies because his claims against American became property of the bankruptcy estate and he was not allowed to pursue them until the trustee abandoned the claims to him at the close of the bankruptcy case. American argues that O.R.S. 12.210 does not apply because the trustee was free to pursue the claims during the pendency of the bankruptcy proceedings, so that American was not shielded from being sued at any time. American argues that section 12.210 applies only when an injunction or statutory prohibition essentially renders a defendant temporarily immune from suit.

■ The court has not located any decisions directly on point, but the decisions rendered under section 12.210 and the Bankruptcy Code suggest that section 12.210 does not operate to toll the statute of

---

**2.** The plaintiffs concede that this argument does not apply to the claims of Hatch Co., which did not file a petition in bankruptcy.

limitations for a debtor during the pendency of a bankruptcy case. The few decisions which apply O.R.S. 12.210 concern situations where *no* action could be commenced on a claim for a certain period. *See, e.g., Ball v. Pioneer Trust Co.*, 175 Or. 1, 5–6, 149 P.2d 976 (1944) (limitations period tolled where a statutory provision prohibited commencement of an action against the administrator of an estate until six months after the grant of administration); *Colby v. City of Portland*, 89 Or. 566, 567–68, 174 P. 1159 (1918) (construing a municipal ordinance providing that no claim could be brought against the City of Portland until sixty days after the claim was presented to the City Counsel).

By contrast, the automatic stay provision in bankruptcy does not prohibit the assertion of claims on behalf of the estate, but only claims directed against the estate. 11 U.S.C. § 362(a); *In re Bialac*, 712 F.2d 426, 431 (9th Cir.1983). The trustee of the estate is empowered to pursue the claims of the estate, and the trustee may abandon claims of the estate to the debtor after notice to the creditors and a hearing. *Sierra Switchboard Co. v. Westinghouse Elec. Corp.*, 789 F.2d 705, 709 (9th Cir.1986).

Thus, Hatch and Hatch Co. have not pointed to an injunction or a statutory prohibition which would have prevented their claims from being filed during the pendency of Hatch's bankruptcy case. The court finds that O.R.S. 12.210 does not toll the statutes of limitations on Hatch's claims.

### 2. *When did the Claims Accrue?*

Hatch and Hatch Co. allege that they were harmed in several ways by the behavior of American and its agent, Allen, Kilmer, as follows: 1) by Allen, Kilmer's use of confidential information against them in the state and federal court actions; 2) when Allen, Kilmer helped the Trovers to structure the Gina Trover estate so that Charles Trover would be judgment proof; 3) by the failure of American and Allen, Kilmer to aggressively pursue monies owed to Hatch Co. by Charles Trover; and 4) when Hatch and Hatch Co. were forced to agree to a disadvantageous settlement of the state and federal court actions.

American contends that the claims of Hatch and Hatch Co. accrued, at the latest, in August of 1987, more than two years before this action was filed in September, 1989. American argues that any injury related to the Trover estate occurred in October, 1986, when Gina Trover died and the spendthrift trust became effective, and in June, 1987, when Judge Leavy ruled in favor of Standard Paving in the federal court action. American also argues that Hatch and Hatch Co. were injured at the time they first incurred attorney fees to oppose the alleged conflicts of interest, which was no later than the Spring of 1986.

Hatch and Hatch Co. do not dispute that they had notice of American's actions in August of 1987. However, they argue that they did not incur any damage as a result of American's mishandling of the litigation until, at the earliest, October of 1987 when they were forced to agree to the settlement of the state and federal actions, and even then if American had heeded their letters regarding the conflicts of interest and other problems, their injuries could have been avoided.

The parties agree that the leading cases on this issue are *Bollam v. Fireman's Fund Ins. Co.*, 302 Or. 343, 730 P.2d 542 (1986); *Jaquith v. Ferris*, 297 Or. 783, 687 P.2d 1083 (1984); and *United States Nat'l Bank v. Davies*, 274 Or. 663, 548 P.2d 966 (1976). The parties disagree as to the application of these cases to the issue of when Hatch and Hatch Co. were actually harmed.

■ The cases hold that a cause of action for negligence does not arise until the defendant's behavior has caused harm and resulting damages to a plaintiff. *Bollam*, 302 Or. at 347, 730 P.2d 542. However, the cases also hold that the statute of limitations begins to run when an injured party discovers that he has been harmed by the acts of the defendant, even though the extent of the injury is not yet known, and payment may not be made for some time. *Jaquith*, 297 Or. at 785–86, 687 P.2d 1083.

In this case, the harm claimed by Hatch and Hatch Co. took place before September, 1987. By December, 1986, the Hatch parties knew that Charles Trover's assets were held in a spendthrift trust, making him essentially judgment proof. In June, 1987, Judge Leavy issued his decision in favor of Standard Paving. The Hatch parties' only hope of undoing these events was to incur attorney fees, which was one of the factors listed by the *Jaquith* court, 297 Or. at 788, 687 P.2d 1083.

As to the argument that the Hatch parties were further injured in October, 1987 when they were "forced" to settle the state and federal court actions to their detriment, Hatch and Hatch Co. have not pointed out any events which led to the settlement that occurred after September, 1987. Hatch and Hatch Co. allege that they were forced to accept the disadvantageous settlement because they knew that Charles Trover had been rendered impecunious and because Allen, Kilmer had improperly used confidential information against Hatch and Hatch Co. in the litigation. Both of these events allegedly occurred before August, 1987.

The court finds that as a matter of law, the claims of Hatch and Hatch Co. accrued before September, 1987. Therefore, plaintiffs' claims of negligence and breach of fiduciary duty are barred by O.R.S. 12.110. Accordingly, American's motion for summary judgment is granted as to plaintiffs' claims for negligence and breach of fiduciary duty.

### 3. *The Contract Claim*

American contends that the claim for "breach of contract" is based on allegations substantially identical to the allegations made in the claims for negligence and breach of fiduciary duty, and that therefore the breach of contract claim does not arise upon a contract for the purposes of determining the applicable statute of limitations.

American relies on a series of decisions which consider the appropriate statute of limitations to be applied in an action for negligent breach of contract. In *Securi-ties–Intermountain, Inc. v. Sunset Fuel Co.*, 289 Or. 243, 611 P.2d 1158 (1980), the Oregon Supreme Court stated the rule in such cases:

> If the alleged contract merely incorporates by reference or by implication a general standard of skill and care to which the defendant would be bound independent of the contract, and the alleged breach would also be a breach of this noncontractual duty, then ORS 12.-110 applies. Conversely, the parties may have spelled out the performance expected by the plaintiff and promised by the defendant in terms that commit the defendant to this performance without reference to and irrespective of any general standard. Such a defendant would be liable on the contract whether he was negligent or not, and regardless of facts that might excuse him from tort liability. Or the nature either of the defendant's default or of the plaintiff's loss may be of a kind that would not give rise to liability apart from the terms of their agreement. In such cases, there is no reason why an action upon the contract may not be commenced for the six years allowed by ORS 12.080. Again, the scope of the damages demanded may characterize a complaint as founded in tort rather than in contract. But if the complaint nonetheless alleges the necessary elements of an action for breach of contract, including the alleged injury, nothing in the statutes prevents proceeding on that theory and limiting the damages accordingly.

289 Or. at 259–60, 611 P.2d 1158 (citations and footnote omitted).

In *Securities–Intermountain*, the court evaluated the allegations of breach of contract brought against an architect to determine whether the six-year or the two-year period of limitations applied. The court concluded that the six-year period of limitations for actions upon a contract applied, as the contract for architectural services set forth the architect's obligations in considerable detail and did not simply invoke a general standard of performance. 289 Or. at 261–62, 611 P.2d 1158.

In *Hale v. Groce,* 304 Or. 281, 744 P.2d 1289 (1987), the court allowed the plaintiff to proceed with a third-party beneficiary claim against an attorney who failed to include a bequest to him in a will. The court found that although the allegations as to the terms of the contract were not as detailed as those set out in *Securities–Intermountain,* the claim adequately alleged breach of a specific contractual promise by nonperformance. 304 Or. at 288–89, 744 P.2d 1289.

By contrast, in *Lindemeier v. Walker,* 272 Or. 682, 538 P.2d 1266 (1975), the court imposed a two-year period of limitations where the plaintiffs did not point to a specific contractual provision but alleged that a realtor had failed to obtain the best sale price for a piece of property. The court stated that the realtor owed his principals the duty to act in good faith and to protect their interests, and that this duty arose only from the fiduciary relationship between realtor and principal, not from a specific contractual provision. 272 Or. at 685, 538 P.2d 1266.

Hatch and Hatch Co. contend that American breached the bond and indemnity agreement in three respects: 1) as part of the indemnity agreement, Hatch and Hatch Co. assigned their claims against Standard Paving and Trover to American, and American breached this provision by failing to pursue the claims; 2) under paragraph 8 of the indemnity agreement, American had the exclusive right to settle claims if such settlement was made in good faith, but American did not pursue a settlement in good faith; and 3) American breached the indemnity agreement by misusing confidential information that Hatch and Hatch Co. were required to disclose to American by the agreement.

■ There is conflicting evidence regarding whether the bond or the indemnity agreement required American to pursue the contractual assignment of claims against Standard Paving and Trover, and whether the bond or indemnity agreement required Hatch and Hatch Co. to provide the confidential information which they contend was misused. If the evidence presented by Hatch and Hatch Co. is accepted on either of these points, the trier of fact could find that American breached a specific contractual obligation rather than a general standard of performance.

As to the allegation that American failed to pursue a settlement in good faith, American contends that this is an implied term of any insurance contract, regardless of whether it is expressly stated. American argues that the good faith requirement is therefore merely a general standard within the terms of *Securities–Intermountain.* However, decisions under Oregon law have treated an insurer's breach of its fiduciary obligation of good faith as a breach of contract, not just a tort. *Farris v. United States Fidelity and Guar. Co.,* 284 Or. 453, 460, 587 P.2d 1015 (1978).

Moreover, the requirement of good faith arises from the contractual relationship between the parties, and not from any general standard of care which would exist independently of the contract. In this case, Hatch and Hatch Co. allege that American's exclusive right to settle was conditioned upon its acting in good faith. As the court pointed out in *Securities–Intermountain,* "contracting parties are free to specify services and standards of performance that may overlap noncontractual obligations. ORS 12.110 certainly does not contemplate that a defendant can defeat an action for breach of his contract by asserting that, independent of the contract, his own conduct constituted a tort." 289 Or. at 259, 611 P.2d 1158.

On the present record, the court cannot say as a matter of law that the contract claim must be treated as a tort claim for purposes of the statute of limitations. Therefore, genuine issues of material fact preclude summary judgment on the claim for breach of contract.

**4. *Did American Breach the Surety Agreement?***

■ American contends that as a matter of law it did not breach its duties as a surety by failing to pursue the action against Standard Paving and Trover because it was precluded from doing so as a

result of the settlement of the state and federal actions. However, the allegations of the complaint focus on the period before the actions were settled, and Hatch and Hatch Co. have raised genuine issues of material fact as to American's role in pursuing the claims against Standard Paving and Trover during that period.

## CONCLUSION

American's motion for summary judgment (# 7) is granted as to the claims for negligence and breach of fiduciary duty and denied as to the claim for breach of contract.