Argued and submitted November 24, 2003, reversed and remanded as to defendant
Dole with respect to Morris arbitration matter; otherwise affirmed
October 20, 2004

# Shirley A. CAIRNS,
*Appellant,*

*v.*

# Donald DOLE
## and Kim V. Ronai,
*Respondents.*

## 00CV2686CC; A118751

99 P3d 781

Marianne Dugan argued the cause for appellant. With her on the briefs was Facaros & Dugan.

William Wheatley argued the cause for respondents. With him on the brief were Brandon J. Baxter and Jaqua & Wheatley, P.C.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Plaintiff appeals from the trial court's dismissal of her legal malpractice claims against defendants Don Dole and Kim Ronai after the court granted defendants' motions for summary judgment based on the statute of limitations, ORS 12.110(1). We reverse and remand in part.

On August 22, 2000, plaintiff filed a complaint against Dole and Ronai, an associate in Dole's firm, alleging that defendants were negligent in the handling of several matters for her from March 1996 through March 1998. Defendants sought to dismiss the claims on the ground that they are barred by the two-year statute of limitations set forth in ORS 12.110(1). On March 3, 2000, plaintiff and Dole had entered into an agreement to toll the statute of limitations on plaintiff's possible claims against Dole until June 3, 2000. They later extended that agreement until September 3, 2000. As to Dole, the question is whether plaintiff's claims accrued more than two years before the date of the tolling agreement, March 3, 2000. Ronai was not a party to the tolling agreement. Thus, as to Ronai, the question is whether plaintiff's claims against her accrued more than two years before August 22, 2000, the date the complaint was filed. The court ruled that plaintiff was aware of defendants' alleged negligence and the resulting damage more than two years before the relevant dates and that the claims against both defendants were therefore time-barred. Plaintiff assigns error to the trial court's ruling.

■■ A claim for legal malpractice is subject to the two-year statute of limitations set forth in ORS 12.110(1).[1] *U.S. Nat'l Bank v. Davies*, 274 Or 663, 665-66, 548 P2d 966 (1976). The limitation period begins to run when the claim accrues. ORS 12.010. The "rule of discovery" applies to legal malpractice claims, and, under it, a claim accrues when the plaintiff is, in fact, harmed and knows, or in the exercise of reasonable care, should know that the damage suffered was caused by

---

[1] ORS 12.110(1) provides, in part, that "[a]n action * * * for any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years[.]"

the defendant's tortious conduct. *Stevens v. Bispham*, 316 Or 221, 227, 851 P2d 556 (1993).

In *Gaston v. Parsons*, 318 Or 247, 864 P2d 1319 (1994), a medical malpractice case, the court said that a claim accrues under the rule of discovery when the person discovers or reasonably should have discovered that the person has suffered "legally cognizable harm," which, under ORS 12.110, the court said, embraces three elements: (1) harm; (2) causation; and (3) tortious conduct. *Id.* at 253. Although a mere suspicion of wrongdoing is insufficient to trigger the accrual of a claim, it is also unnecessary, under the rule of discovery, for the plaintiff to know to a certainty that each particular element exists. The "quantum of awareness" is between the two extremes.

> "[T]he statute of limitations begins to run when the plaintiff *knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility* that each of the three elements (harm, causation, and tortious conduct) exists."

*Id.* at 256 (emphasis added).

Precisely when a person reasonably should have known facts that would make a reasonable person aware of a substantial possibility that the harm suffered was caused by an attorney's negligence typically presents a question of fact, *Stevens*, 316 Or at 228, unless the facts are such that no triable issue exists and the matter may be resolved as a matter of law. *Compare U.S. Nat'l Bank*, 274 Or at 668 ("[t]here is no doubt that [the client's] necessity to defend [an action resulting from his lawyer's bad advice] caused him damage more than two years prior to the commencement of the present action"), *with Hoeck v. Schwabe, Williamson & Wyatt*, 149 Or App 607, 613, 945 P2d 534 (1997) (client's relationship of trust with his attorney, reliance on the attorney's advice, and the absence of facts suggesting that attorney's advice was incorrect gave rise to a question of fact as to when the plaintiffs knew or reasonably should have known that attorney's advice was incorrect and the cause of the plaintiffs' harm). A plaintiff has a duty to act diligently in discovering the relevant facts. *Branch v. Hensgen*, 90 Or App 528, 531, 752 P2d 1275, *rev den*, 306 Or 527 (1988). The nature of the plaintiff's

relationship with the defendant is relevant to the question whether the plaintiff has acted with sufficient diligence. *Hoeck*, 149 Or App at 612.[2]

■ In reviewing the trial court's ruling on summary judgment, we view the record in the light most favorable to plaintiff, drawing all reasonable inferences from the facts in her favor, to determine whether there is a genuine issue of material fact as to when, with due diligence, plaintiff knew or reasonably should have known of facts that would make a reasonable person aware of a substantial possibility that her damages were caused by defendants' alleged malpractice. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). To the extent possible, we recite the facts from the underlying matters that gave rise to the malpractice claims in chronological order and then address the trial court's rulings.

Plaintiff owned three contiguous parcels of real property. The properties secured obligations to her primary creditors, Citizens Bank and First Interstate Bank, later known as Wells Fargo Bank (First Interstate/Wells Fargo). Plaintiff was in arrears on her obligations and faced foreclosure if she did not bring the payments current. Plaintiff attempted several times to resolve her financial difficulties through bankruptcy under Chapter 13 of the United States Bankruptcy Code. As a part of a bankruptcy plan approved in September 1994, plaintiff agreed that she would sell a 1.96 acre parcel (Parcel 1), which was her personal residence, in order to satisfy her obligations with Citizens Bank and First Interstate/Wells Fargo and prevent loss through foreclosure of her remaining property, consisting of 82 acres, including farmland, a five-acre home site, and a mobile home (Parcels 2 and 3).

In May 1995, the Morrises agreed to buy Parcel 1, and the land sale contract was approved by the bankruptcy

---

[2] We reject without further discussion plaintiff's contention that *U.S. Nat'l Bank* and *Hoeck* establish a rule that a legal malpractice claim does not accrue until (1) the litigation relating to the negligently handled matter has resolved or (2) the injured client has received competent advice that the attorney was negligent. Those cases simply represent applications of the rule of discovery to the particular facts presented.

trustee. The transaction was scheduled to close in December 1995. Until that time, the Morrises were to live on the property and pay plaintiff rent. Plaintiff moved to the mobile home on Parcels 2 and 3. The Morris transaction fell through, however, because plaintiff was unable to convey marketable title to Parcel 1 due to zoning restrictions that prevented a partition and separate sale of the property. After September 1995, the Morrises stopped paying rent, and they refused to vacate the property. Plaintiff attempted to evict them, but she voluntarily dismissed the proceeding when she learned that her eviction notice was defective. The bankruptcy court dismissed her petition in January 1996 and also rejected a subsequent petition. After that time, plaintiff lost the protection of the bankruptcy court's stay of the Citizens Bank and First Interstate/Wells Fargo foreclosures.

In March 1996, plaintiff retained defendants to represent her on the Morris matter and to assist her in resisting foreclosure efforts by Citizens Bank and First Interstate/Wells Fargo. She told them of her financial difficulties, and also that she believed that both Citizens Bank and First Interstate/Wells Fargo had overstated her delinquencies. She also told them that a portion of her obligation to Citizens Bank was invalid because the trust deed and a concurrently executed loan extension agreement had been executed during a pending bankruptcy proceeding without the bankruptcy trustee's approval. Defendants expressly did not assume representation of plaintiff in her bankruptcy matters.

Until July 1996, defendants attempted to renegotiate the sale of Parcel 1 with the Morrises, but efforts were unsuccessful. On August 2, 1996, defendants filed a statutory claim for forcible entry and wrongful detainer (FED) on plaintiff's behalf in order to evict the Morrises and recover possession of the property and rent. *See* ORS 105.110. The Morrises moved to dismiss the proceeding or to abate it for arbitration, and the parties participated in a hearing on the motion on August 20, 1996. The trial court granted the Morrises' motion to dismiss, and defendants were ordered to file an amended complaint. Defendants filed an amended complaint on August 30, 1996, but it was filed with the incorrect case number. After discovering the error, defendants

filed an amended complaint with the proper case number on September 30, 1996.

In the meantime, Citizens Bank had begun to foreclose on a trust deed to Parcel 1, which was also secured by Parcels 2 and 3. Defendants negotiated with Citizens Bank's attorney, objecting to the calculation of the loan balance and interest and asserting that a loan extension agreement and the trust deed were void because they had been obtained during the pendency of a bankruptcy petition and in violation of the automatic stay of bankruptcy. In a letter dated October 2, 1996, Ronai demanded that Citizens Bank terminate the foreclosure proceeding and threatened to seek an injunction or a temporary restraining order. Defendants ultimately did not seek an injunction, however, and on October 9, 1996, Citizens Bank foreclosed on its trust deed and purchased Parcels 2 and 3 at foreclosure at a price well below their fair market value. It also obtained a deficiency judgment for the balance owing. Defendants did not object to Citizens Bank's request for a deficiency judgment and did not seek a homestead exemption. With regard to the Citizens Bank matter, plaintiff's complaint alleges that defendants were negligent in failing to file a motion for a temporary restraining order to halt the foreclosure and in allowing Citizens Bank to take a deficiency judgment. It alleges that her damages included the loss of Parcels 2 and 3 and consequential damages flowing from that loss.

At a hearing on December 2, 1996, the trial court dismissed the FED complaint, ruling that plaintiff's dispute with the Morrises was not subject to FED procedures. The court also granted plaintiff's motion to abate the matter for arbitration, as provided in the sale agreement. Plaintiff had attended both the August and December hearings, but she testified that she did not obtain all the documents from the FED proceeding until much later and was not aware of the legal significance of the proceedings. Defendants told plaintiff that delays in the FED proceeding had been caused by the court's calendar. With regard to the FED matter, plaintiff's complaint alleges that defendants were negligent in delaying filing the FED complaint, in filing the complaint in an improper form, in submitting illegible exhibits, in filing documents with the wrong caption, in delaying filing of the

amended complaint, in failing at the August 20 hearing to call plaintiff as a witness to respond to the Morrises' motion to dismiss, in failing to tell the court of the pending foreclosure proceeding, and in failing to request interim payment of rent by the Morrises. Plaintiff alleged that as a result of defendants' negligence she suffered damages, including loss of use of her property, lost rent, roadblocks to obtaining financing to prevent foreclosure, and physical damage to the property.

During this same time, First Interstate/Wells Fargo held a trust deed on Parcel 1 securing a loan on which plaintiff was in arrears. When defendants began representing plaintiff, plaintiff provided defendants with information that First Interstate/Wells Fargo had failed to credit plaintiff for payments of approximately $7,000. Defendants negotiated with First Interstate/Wells Fargo to correct the loan balance, to no avail, and in October 1996, in order to avoid foreclosure and sale of Parcel 1, plaintiff paid First Interstate/Wells Fargo the alleged deficiency amount under protest. Plaintiff again fell behind in her payments to First Interstate/Wells Fargo, however, and First Interstate/Wells Fargo again began foreclosure proceedings. Defendants did not take any legal action to stop the foreclosure of the trust deed to Parcel 1. With regard to the First Interstate/Wells Fargo matter, plaintiff's complaint alleges that defendants were negligent in failing to take action to correct the loan balance and in failing to seek an injunction to prevent foreclosure. She alleges that she suffered damages in the form of excess loan payments and interest charges and damage to her credit rating.

In February 1997, plaintiff asked a Roseburg attorney whether a misstatement of the balance owed in a trust deed foreclosure document was sufficient to have the foreclosure set aside. She did not retain the attorney, however, and he declined to respond to her inquiry.

The proceeds from the October 1996 foreclosure sale of Parcels 2 and 3 did not fully satisfy plaintiff's indebtedness to Citizens Bank, and it planned to foreclose on an additional trust deed to Parcel 1 on June 4, 1997. Additionally, First Interstate/Wells Fargo issued a notice that it planned to foreclose on its trust deed to Parcel 1 on September 11, 1997.

Between June and August 1997, plaintiff filed two *pro se* petitions for Chapter 13 bankruptcy in order to prevent the foreclosures. Both resulted in an automatic stay of the pending Morris arbitration matter. Both petitions were dismissed, and plaintiff was prohibited from filing another bankruptcy petition for one year.

Ronai left Dole's employ in late March 1997. On August 4, 1997, while the Morris arbitration matter was subject to a bankruptcy stay, plaintiff retained attorney Beverly Anderson to represent her in her bankruptcy matters and to assist her in pursuing through bankruptcy a claim against Citizens Bank for damages for the loss of Parcels 2 and 3 and preventing further foreclosure efforts by Citizens Bank and First Interstate/Wells Fargo. Anderson's notes from her initial meeting with plaintiff reflect that plaintiff described her lengthy financial difficulties, discussed the illegality of the Citizens Bank trust deed, the FED proceeding, defendants' failure to seek to halt Citizens Bank's foreclosure, and the filing of the FED complaint with the wrong case number. Anderson testified that plaintiff was more knowledgeable about business matters than many clients but that she was not always aware of legal implications.

After plaintiff filed bankruptcy petitions in June and August 1997 and began seeking advice from Anderson in an attempt to resolve her difficulties through bankruptcy, Dole withdrew as plaintiff's legal counsel on August 25, 1997. He resumed representing plaintiff when the Morrises' arbitration was reinstituted in January 1998, after the dismissal of plaintiff's August 1997 bankruptcy petition and the lifting of the bankruptcy stay. The arbitration matter came to hearing, and on February 14, 1998, the arbitrator awarded plaintiff possession of Parcel 1, unpaid rent, and attorney fees and costs. The judgment on the arbitration matter was entered March 20, 1998. Shortly thereafter, plaintiff learned that the Morrises could not be found to satisfy the judgment. Plaintiff's complaint asserts that defendants were negligent with regard to the arbitration matter in failing to request arbitration earlier in their representation of plaintiff, in delaying preparation and service of arbitration materials, in failing to file a claim on behalf of plaintiff against the real estate broker who had assisted in the sale of Parcel 1, and in failing to

seek correction of the arbitration award. Plaintiff's alleged damages encompass those alleged with respect to the FED proceeding as well as the inability to collect on the arbitration judgment due to an inability to locate the Morrises.

In October 1997, Anderson filed a complaint against Citizens Bank on behalf of plaintiff, seeking a declaration that the trust deed that had formed the basis for the October 9, 1996, foreclosure of Parcels 2 and 3 was void, claiming that Citizens Bank had interfered with plaintiff's contractual relations with the Morrises, and seeking damages. The complaint alleged that, as a result of Citizens Bank's acts, plaintiff had suffered damages consisting of the loss of Parcels 2 and 3, the loss of value to Parcel 1, loss of rental income from Parcel 1, and loss of business income.

In January 1998, plaintiff, again represented by Anderson, successfully obtained a temporary restraining order against First Interstate/Wells Fargo to prevent the foreclosure of First Interstate/Wells Fargo's mortgage on Parcel 1, based, in part, on allegations concerning the improper loan balance.

In July 1999, Citizens Bank admitted that its trust deed to Parcel 1, which had provided the basis for the trustee's sale of Parcels 2 and 3, was void. In January 2000, plaintiff settled her claim against Citizens Bank for $100,000. In July 2000, the court denied plaintiff's request for attorney fees. Some time in 1999, Anderson advised plaintiff of a potential malpractice claim against defendants for their handling of the Citizens Bank and First Interstate/Wells Fargo matters.

■■ Part of the difficulty in resolving the statute of limitations issues in this case is that the complaint states multiple specifications of negligence in the handling of the Morris FED and arbitration matters and the Citizens Bank matter as a single claim with many forms of damage flowing from the entire course of conduct. For statute of limitations purposes, a claim accrues when the plaintiff is aware that he or she has suffered *some* harm as a result of the defendant's alleged negligence. It is immaterial that the plaintiff may not have known the full extent of the damages. *Jaquith v. Ferris*, 297 Or 783, 788, 687 P2d 1083 (1984); *Godfrey v. Bick &*

*Monte*, 77 Or App 429, 713 P2d 655, *rev den*, 301 Or 165 (1986). Also, it is immaterial for statute of limitation purposes that the plaintiff may not have been aware of each and every specification of negligence relating to a single injury, so long as the plaintiff was aware of a substantial possibility that the defendant's conduct was tortious and harmed her. *See Gaston*, 318 Or at 259 (in analyzing when a claim accrues for statute of limitations purposes, the issue is when the plaintiff knew or should have known facts that would make a reasonable person aware of a substantial possibility that he or she had suffered damage as the result of tortious conduct); *McClure v. LeRoy*, 133 Or App 229, 235, 890 P2d 425 (1995). Thus, it is arguable that plaintiff's negligence claim accrued when she became aware of a substantial possibility that any of her alleged harm was caused by any one of the specifications of negligence. Keeping in mind, however, our obligation on summary judgment to examine the record for genuine issues of material fact in the light most favorable to plaintiff, we consider the allegations relating to each matter separately in determining whether the record on summary judgment shows that, before the tolling of the limitation period, plaintiff was aware of a substantial possibility that she had suffered harm as a result of defendants' negligence.

■ As to the FED matter, the trial court ruled that by August 4, 1997, when plaintiff consulted Anderson, she was aware of her alleged damages and that defendants' negligence was the cause. We agree with the trial court.[3] Anderson's notes and testimony reflect that plaintiff told Anderson on August 4, 1997, that defendants had filed the FED complaint with the wrong case number. By that time, plaintiff was also aware that defendants had been unsuccessful in helping her to evict the Morrises, that she had lost the use of Parcel 1, that Parcel 1 had been damaged by Morrises, and that she had not recovered rent during the period of their occupancy. Accordingly, plaintiff was aware that she had suffered damages. With the exercise of reasonable care, by August 4, 1997, plaintiff should have known facts that would

---

[3] We do not mean to suggest that we have an opinion as to whether defendants' handling of the FED matter was, in fact, negligent. Our discussion relates only to what plaintiff knew concerning her *allegations* of negligence.

have made a reasonable person aware of a substantial possibility that defendants had acted negligently in the FED matter and that their negligence had caused her harm. We conclude that a claim for legal malpractice concerning the allegations relating to the FED matter accrued no later than August 4, 1997, when plaintiff consulted Anderson. The statute of limitations on that claim ran two years later, on August 4, 1999, before plaintiff signed the tolling agreement with Dole and before the filing of the complaint. We affirm the trial court's granting of defendants' motion for summary judgment as to the allegations relating to the FED proceeding.

As to the Morris arbitration, the trial court ruled that plaintiff should have been aware no later than January 7, 1998, the date of the arbitration hearing, that defendants' alleged negligence was the cause of her alleged harm. We note that plaintiff prevailed in the arbitration matter. She alleged, however, that defendants were negligent in failing to initiate arbitration at an earlier date and in delaying preparation of arbitration materials. She alleged that, as a result of defendants' negligence in delaying the proceedings, she was unable to collect on the judgment against the Morrises.[4] We do not see how, on this record, it is possible to determine as a matter of law that plaintiff was aware of her inability to collect on her judgment against the Morrises before that judgment was entered on March 20, 1998. For that reason, the record on summary judgment does not establish that plaintiff's claim against Dole based on the arbitration matter accrued before March 20, 1998, and outside of the period allowed by plaintiff's tolling agreement with Dole. We accordingly reverse the trial court's granting of defendants' motion for summary judgment as to Dole on the two allegations of negligence relating to delays in the arbitration matter and the allegation of damages relating to plaintiff's inability to collect on her judgment against the Morrises.[5] There was no

---

[4] There are other allegations of negligence relating to the arbitration proceeding, including failing to make a claim against the broker and failing to seek correction of the arbitration award, but we are not able to discern which alleged damages are attributable to those specifications.

[5] Paragraphs 54(i) and (j) of the second amended complaint alleged that defendants were negligent in "failing to request arbitration early in their representation of plaintiff" and in "delaying preparation and service of the required arbitration

tolling agreement between plaintiff and Ronai. For that reason, her liability with respect to the arbitration matter is dependent on negligent conduct discovered by plaintiff no earlier than August 22, 1998. We conclude that the record on summary judgment requires the finding that before August 22, 1998, plaintiff reasonably should have been aware of a substantial possibility that any damages resulting from the inability to collect on the arbitration judgment were caused by Ronai's alleged negligent handling of the arbitration matter. We affirm the trial court's decision that the statute of limitations ran as to Ronai on the arbitration matter before plaintiff filed her complaint.

 As to the allegations relating to the October 1996 Citizens Bank foreclosure, the trial court ruled that plaintiff was aware not later than August 4, 1997, when she consulted Anderson, that she had been damaged by defendants' alleged negligence. We agree that there is evidence from which it could be found that plaintiff was aware of defendants' alleged mishandling of the Citizens Bank matter when she consulted Anderson, but we conclude that the record on summary judgment requires the finding that no later than October 1997, when plaintiff filed her complaint against Citizens Bank, she was aware of a substantial possibility that she had been harmed by Citizens Bank's foreclosure of an invalid trust deed. By that time, we conclude, plaintiff also should have been aware of a substantial possibility that her loss of Parcels 2 and 3 through the Citizens Bank foreclosure was caused by defendants' alleged failure to seek a temporary injunction. To summarize the Citizens Bank matter, we conclude that any claim for legal malpractice with respect to the Citizens Bank matter accrued in October 1997 when plaintiff filed her complaint against Citizens Bank. The statute of limitations ran in October 1999, before plaintiff's tolling agreement with Dole and the filing of the complaint. We accordingly affirm the trial court's granting of defendants' motion for summary judgment with respect to the allegations relating to the October 1996 Citizens Bank foreclosure.

---

materials." Paragraph 56(d) alleges that plaintiff was damaged by the "loss of plaintiff's ability to collect against the Morrises while their whereabouts were still known."

With respect to the First Interstate/Wells Fargo matter, the trial court held that, based on the record on summary judgment, plaintiff knew no later than January 1998, when she obtained a temporary restraining order preventing First Interstate/Wells Fargo's foreclosure of a trust deed to Parcel 1, that defendants had been negligent in failing to attempt to prevent foreclosure efforts by First Interstate/Wells Fargo.[6] We agree. When plaintiff obtained a temporary restraining order, she reasonably should have been aware of a substantial possibility that any damage she suffered in the context of the First Interstate/Wells Fargo matter was as a consequence of defendants' negligent failure to seek a correction of the deficiency and restraining order. The statute of limitations, accordingly, ran in January 2000, before the execution of the tolling agreement and the filing of the complaint. The trial court did not err in ruling that the allegations relating to the First Interstate/Wells Fargo matter are time-barred.

Reversed and remanded as to defendant Dole with respect to Morris arbitration matter; otherwise affirmed.

---

[6] In a February 2000 letter to the Oregon State Bar Professional Liability Fund, plaintiff said that, in light of the pending Morris arbitration matter, in which she was still represented by Dole, she "did not feel that [she] could file a malpractice [claim with regard to the First Interstate/Wells Fargo matter] in the midst of multiple legal problems with the result another layer of problems or do I get it untangled and then assess the damages."