Argued and submitted December 9, 2022, affirmed March 8, 2023

Scott COCKEY,
*Plaintiff-Appellant,*

*v.*

George MEAD,
an individual and
The Mead Law Firm, P.C.,
an Oregon professional corporation,
*Defendants-Respondents.*

Multnomah County Circuit Court
19CV25628; A177424

526 P3d 1201

In this legal malpractice case, plaintiff appeals from a judgment granting summary judgment in favor of defendant on the ground that plaintiff's claim is time-barred. The parties dispute whether, under the statute-of-limitations discovery rule, harm accrues before or after the conclusion of litigation that arises from a professional's negligent act. *See* ORS 12.110(1) (providing discovery rule). *Held*: Where the outcome of litigation subsequent to an allegedly negligent act could establish that the defendant was not negligent in the first instance, the statute of limitations does not begin to run until the conclusion of that litigation. But where the plaintiff knows, or should know, that the defendant was negligent, and the subsequent litigation serves only to determine the extent of the harm, the statute of limitations begins to run from the time that the plaintiff learns, or should have learned, that the defendant's act was negligent and that that negligence caused some harm. The record left no issue of material fact about when the limitation period commenced; more than two years before plaintiff filed his malpractice claim, plaintiff knew, or should have known, that defendant's act was negligent and that it caused some harm.

Affirmed.

Melvin Oden-Orr, Judge.

Matthew Whitman argued the cause and filed the briefs for appellant.

Julie A. Smith argued the cause for respondents. Also on the brief was Cosgrave Vergeer Kester LLP.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.*

_____

* Jacquot, J., *vice* James, J. pro tempore.

JOYCE, J.

Affirmed.

**JOYCE, J.**

In this legal malpractice case, plaintiff appeals from a judgment granting summary judgment in favor of defendant on the ground that plaintiff's claim is time-barred.[1] The question we must resolve is whether there is a genuine issue of material fact as to whether plaintiff knew or should have known of any harms caused by defendant's alleged tortious conduct more than two years before plaintiff filed his legal malpractice claim in July 2019. *See* ORS 12.110(1); *U.S. Nat'l Bank v. Davies*, 274 Or 663, 665, 548 P2d 966 (1976) (applying two-year statute of limitations to legal malpractice claim pursuant to ORS 12.110(1)). We review a trial court's grant of summary judgment to determine whether there are any issues of material fact and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *see generally Jones v. General Motors Corp.*, 325 Or 404, 939 P2d 608 (1997). After reviewing the record and all reasonable inferences in the light most favorable to plaintiff, *Marshall v. PricewaterhouseCoopers, LLP*, 316 Or App 610, 626, 504 P3d 1236 (2021), we affirm.

The statute of limitations begins to run at the time a cause of action accrues. ORS 12.010. To determine when a legal malpractice claim accrues, the discovery rule applies. *Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or 270, 277, 265 P3d 777 (2011) (construing discovery rule in legal malpractice case). Under that rule, the limitation period begins to run on a plaintiff's claim only when "the client knows or, in the exercise of reasonable care, should know every fact which it would be necessary for the client to prove *** in order to support his right to judgment." *Id.* (internal quotation marks and brackets omitted). To establish a legal malpractice claim, a plaintiff must prove that they (1) incurred harm (2) that was caused by (3) their attorney's tortious conduct. *Id.*; *Marshall*, 316 Or App at 629.

The parties agree that the single question on appeal concerns when plaintiff knew or should have known that he had incurred the appropriate kind of harm. As to that question, the relevant events are as follows:

---

[1] Though plaintiff filed his claim against both his former attorney and that attorney's employer, we refer to "defendant" in the singular.

- In 2016, concerned about his adult disabled daughter's safety while in the guardianship of her mother, plaintiff hired defendant to petition in probate court for the mother's removal as guardian, his own appointment as guardian, and his daughter's placement in his home.

- In April 2016, while defendant was representing plaintiff, the parties to the guardianship proceeding entered into a settlement whereby an independent guardian was appointed.

- In May 2016, plaintiff established a special needs trust for his daughter.

- In September 2016, the independent guardian informed plaintiff that his daughter would be placed in a group home rather than plaintiff's home.

- In October 2016, plaintiff, after hiring a new attorney, petitioned to have the independent guardian removed and have himself appointed.

- The independent guardian then moved for an order compelling plaintiff to fund the special needs trust to cover the guardian's professional and legal fees.

- In January 2017, the probate court issued an "order on [plaintiff's] objection to funding a special needs trust," which required plaintiff to fund the special needs trust by "depositing a meaningful sum sufficient to satisfy reasonable debts incurred in the care of the Protected Person, including necessary attorney fees" based on its finding that, in the settlement agreement, plaintiff had stipulated to funding the trust.

- In March 2017, plaintiff filed a separate action in circuit court asking the court to declare that (1) the special needs trust could not be used to pay the guardian's legal fees or professional fiduciary compensation and (2) the probate court could not require plaintiff to make any particular distributions as trustee of the trust.

- In April 2017, plaintiff withdrew his October 2016 petition to remove the guardian and have himself appointed.

- In March 2018, the circuit court concluded that plaintiff had to fund the special needs trust to reimburse the independent guardian's costs, including any attorney fees.

Plaintiff filed his malpractice complaint in June 2019. In his complaint, plaintiff alleged that defendant committed malpractice in April 2016, in the guardianship proceeding settlement, by failing to ensure that the independent guardianship was temporary and by binding him to fund the special needs trust. Plaintiff alleged that defendant's conduct caused legally cognizable damage by resulting in plaintiff being "forced to pay *** guardianship fees, attorney's fees, and other professional fees in attempts to undo the consequences of [defendant's] negligence."

Plaintiff admitted that he knew that defendant's negligence had caused him harm when, in October 2016, he decided to hire a new attorney to file a petition to remove the independent guardian. He hired a new attorney at that point because he had "learned that [defendant] had never secured the agreement of [the independent guardian] to any limitation of time or scope." He also admitted that he knew that "[d]efendants' advice had begun to cost him money by April 2017."

The trial court granted defendant's motion for summary judgment on the ground that plaintiff's claim was barred by the two-year statute of limitations.

As noted, the question before us is narrow: Did a genuine issue of material fact exist as to when plaintiff knew or should have known that he had been harmed by defendant's negligence? As to that question, both parties find support, at least facially, in two lines of cases that involve a professional's negligent act that results in additional litigation for the plaintiff. Plaintiff relies on *Davies*, 274 Or 663, and its progeny to argue that his claim did not accrue until March 2018, when the circuit court construed the trust to require plaintiff to cover the independent guardian's legal

fees and compensation through the date of that circuit court judgment. He asserts that he could have "*prevailed outright in* [that later circuit court case], and the Court could have determined that he had no financial obligation, either to fund the Supplemental [*sic*] Needs Trust nor to pay the guardian's attorney fees. Had Plaintiff prevailed, he would never have suffered legally cognizable harm at all." (Emphasis in plaintiff's brief.)

Defendant relies on a different Supreme Court case, *Jaquith v. Ferris*, 297 Or 783, 687 P2d 1083 (1984), and its progeny to argue that plaintiff suffered actionable harm no later than April 2017, when he incurred legal expenses to try to undo the alleged malpractice.

As we explain, the distinction between the cases on which plaintiff and defendant rely ultimately turns on whether the plaintiff knew the defendant's negligence was the cause of their harm versus whether the plaintiff knew that they had been harmed. Where the outcome in litigation subsequent to the negligent act could establish that the defendant was not negligent in the first instance, the statute of limitations does not begin to run until the conclusion of that litigation. But where the plaintiff knows or should know that the defendant was negligent, and the litigation subsequent to the negligent act serves only to determine to what extent the plaintiff has been harmed, the statute of limitations begins to run from the time that the plaintiff learns or should have learned that the defendant's act was negligent and that it caused some harm.

We begin with *Davies*. *Davies* was an attorney malpractice action where the defendant had advised the plaintiff that the plaintiff could take a certain action with respect to stock funds. 274 Or at 665. Four years after that advice, the plaintiff was sued for return of the funds. The plaintiff ultimately settled the action. A year after entering into the settlement agreement, the plaintiff sued the defendant for malpractice, seeking both attorney fees and recovery of the amount that he had paid in settlement. The Supreme Court reversed dismissal of the case on statute-of-limitations grounds. It first concluded that defending an action—including the incurrence of attorney fees—that

arose out of an attorney's negligent advice constituted harm. *Id.* at 667-78. But it went on to hold that whether that harm was caused by the defendant could not be known until the lawsuit against the plaintiff had been resolved, because it was only then that the plaintiff would know that the defendant's advice was negligent, thereby causing her harm. *Id.* at 668-69.

In *Jaquith*, by contrast, the question was not whether the plaintiff was aware of the cause of her harm but rather when she had incurred the harm, a difference that the court ultimately concluded required a result different from that in *Davies*. *Jaquith* involved litigation brought by a plaintiff against her realtor for undervaluing property that the plaintiff then entered into a contract to sell. 297 Or at 785. When the plaintiff discovered the undervaluation, she refused to proceed with the sale; the prospective buyer then sued her for specific performance. At the conclusion of that action, the plaintiff was forced to convey the property. The plaintiff then commenced a negligence action against the realtor, more than two years after she discovered the undervaluation of her property, but within two years of the specific-performance lawsuit being fully resolved.

On appeal from a dismissal on statute-of-limitations grounds, the plaintiff argued that "she sustained no harm until the extent of her damage was ascertained" at the conclusion of the specific-performance action. *Id.* at 788. The Supreme Court rejected that argument, concluding that the plaintiff's contractual obligation to sell at the undervalued price, which arose from the defendant's negligence and which existed when she signed the agreement to sell the property, had itself caused harm. Additionally, "[t]he legal costs plaintiff assumed to resist her contractual duty to convey likewise constituted harm." *Id.* In short, more than two years before filing the negligence action, the plaintiff knew of the defendant's negligence (undervaluing the property), knew that she had incurred harm (the expenses of resisting the specific-performance action and the contractual obligation itself), and knew that defendant's negligence had caused that harm (the underpriced sales contract resulted from defendant's undervaluation); it was only the extent of

her damages that she did not ascertain until the conclusion of the specific-performance action. *Id.*

The Supreme Court further synthesized *Davies* and *Jaquith* in *Bollam v. Fireman's Fund Ins. Co.*, 302 Or 343, 730 P2d 542 (1986). There, the plaintiffs brought a negligence action against their car insurance company, alleging that the company had improperly handled a claim in a way that exposed the plaintiffs to excess liability. After a car crash in which the plaintiffs were at fault, their insurance company began making payments to the party injured in the crash. The plaintiffs hired an attorney to evaluate the claim. The party injured in the crash ultimately sued the plaintiffs, resulting in the insurance company paying the balance of the policy limits and the plaintiffs having to pay an additional sum. *Id.* at 345-46. The plaintiffs then brought an action against their insurance company for negligence, more than two years after they hired an attorney to evaluate the claim, but less than two years after they had to pay the crash victim in the lawsuit. The question the court was faced with was whether the plaintiffs' claim accrued when they incurred the attorney fees or when they had to pay the crash victim.

In concluding that the claim accrued when the plaintiffs had to hire an attorney, the court contrasted *Davies* and *Jaquith*. On the one hand, in *Davies*, when the plaintiff incurred attorney fees defending the stock-fund action, she could not have known whether the cost of defending the action was caused by negligent advice, whereas, on the other hand, in *Jaquith*, "no issue related to defendant's alleged negligence would be resolved in the litigation that followed the respective defendant's negligent conduct"; that is, the fact that the property had been undervalued was not at issue in the specific performance action. *Bollam*, 302 Or at 352-53. The court in *Bollam* distinguished the plaintiff's case from *Davies* by noting that, in *Davies*, "the very question whether the attorneys' advice was correct would be resolved in the ligation" brought against the plaintiff. *Id.* at 352. "Only if the litigation precipitated by the stock sale transaction was resolved against the [plaintiff] would it become apparent that the cost of defending the suit was

*caused* by the attorneys' advice and not a misapprehension of rights" by the party that sued the plaintiff. *Id.* (emphasis in original).

The court then concluded that the plaintiffs' claim in *Bollam* was more like *Jaquith* because the "result of the litigation between the present plaintiffs and [the crash victim] would determine only the amount of plaintiffs' liability to [him]," and not whether the insurance company had been negligent at all. *Id.* "Only the full extent of harm was left to be determined" after the insurance company's alleged negligence, which occurred—and about which the plaintiffs knew—more than two years prior to the filing of the lawsuit. *Id.* at 353.

In short, both *Jaquith* and *Bollam* involved facts that left no doubt that the respective plaintiffs knew, more than two years prior to filing negligence actions, that the defendants had been negligent, that the plaintiffs had incurred harm, and that the harm was the result of the defendants' negligence. Subsequent litigation may have informed the plaintiffs' knowledge of the *extent* of the harm they incurred, but for statute-of-limitations purposes, the proverbial clock began to run from when the harm accrued, not when its full extent was discovered.

The same is true in the present matter. Like the plaintiff in *Jaquith* (and unlike in *Davies*), plaintiff knew that defendant's negligent conduct had caused him harm more than two years before filing his legal malpractice claim. Plaintiff hired a new attorney both to petition to remove the independent guardian and to object to paying on the trust, the latter of which resulted in the probate court ordering him to fund the trust in January 2017. And by his own admissions, plaintiff knew that he had incurred harm as a consequence of defendant's conduct by that point. *See Jaquith*, 297 Or at 788 (legal costs incurred because of the attorney's negligence can constitute a cognizable harm). What is more, the subsequent trust case could not have obviated defendant's alleged negligence; at most, it would have "determine[d] only the amount of plaintiff['s] liability to" the special needs trust. *Bollam*, 302 Or at 352. Framed slightly differently, unlike in *Davies*, in this case, the trust

case litigation did not determine the culpability of defendant's conduct; at most, prevailing in it would have mitigated the extent of plaintiff's damages.

In sum, on this record, no genuine issue of material fact exists that plaintiff knew that defendant's alleged negligence had caused him harm more than two years before he filed the malpractice claim. Plaintiff's concessions together with the underlying procedural facts establishes that, by at least April 2017, plaintiff knew that he had incurred compensable harm that was caused by defendant's purported negligence. Accordingly, the trial court properly concluded that the limitation period was triggered no later than April 2017, more than two years before plaintiff filed his legal malpractice claim.

Affirmed.