Argued and submitted June 9, reversed and remanded November 19, 2008

## Tracy A. KELLY,
*Plaintiff-Appellant,*

*v.*

## Todd LESSNER,
*Defendant-Respondent.*

Multnomah County Circuit Court
060809121; A135003

197 P3d 52

Jeffrey S. Frasier argued the cause for appellant. With him on the briefs were Brian D. Chenoweth and Chenoweth Law Group, PC.

Todd Van Rysselberghe argued the cause for respondent. With him on the brief were Daniel L. Keppler and Kennedy, Watts, Arellano & Ricks LLP.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

■ Plaintiff appeals a judgment dismissing her amended complaint for failure to commence her action against defendant within the statute of limitations. ORCP 21 A(9). Our review of an order granting an ORCP 21 A(9) motion to dismiss is limited to the face of the pleadings. In conducting that review, we assume the truth of all allegations in the complaint and give the plaintiff, as the non-moving party, the benefit of all favorable inferences that could be drawn from those allegations. *Dauven v. St. Vincent Hospital*, 130 Or App 584, 586, 883 P2d 241 (1994). We reverse.

Plaintiff initiated this action in August 2006 for damages against defendant, alleging two claims for relief based on theories of negligence and breach of fiduciary duty. In substance, plaintiff alleges that defendant, acting as plaintiff's financial advisor, advised plaintiff to invest in a furniture store business known as Full Upright Position, owned by Deborah Starr. The following allegations are common to both claims:

"4.

"In or about May or June 2001, Starr approached Plaintiff about investing in her business. Knowing that Defendant was Starr's CPA, and trusting Defendant to provide sound and honest advice as her own CPA, Plaintiff inquired of Defendant about the soundness of Starr's furniture business. Defendant advised Plaintiff that (1) this was a sound investment with a nice return; (2) the company was very stable and growing; and (3) he was Starr's only financial adviser and accountant, and he knew everything about Starr's and Full Upright Position's financial status.

"5.

"Based upon Defendant's advice, Plaintiff loaned Starr $100,000 on or about June 13, 2001. The loan was documented by a promissory note for $100,000 at 10 percent interest, payable in 36 equal installments of $3,397.96, starting on January 20, 2002, and ending on December 20, 2004, for a total payout of $122,326.56. Based on the further advice of Defendant, the loan was secured by a trust deed on Starr's home in Portland. Defendant represented to Plaintiff that the loan would be fully secured by the trust

deed. The loan and security documents were prepared by Defendant.

"6.

"Defendant's representations about the stability of Starr's business and the soundness of the investment were false. As Starr's personal and business CPA and financial advisor, Defendant was aware that Starr's business was in severe distress and on the verge of failure. Defendant failed to disclose this information to Plaintiff, and in fact, made contrary representations that caused Plaintiff to act to her detriment.

"7.

"Defendant's representation about the adequacy of the security for the loan was false, and Defendant made the representation without sufficient knowledge of its truth or falsity, in that at the time of the representation, Defendant had not conducted research or made an inquiry as to the available equity in Starr's property.

"* * * * *

"9.

"Starr's business failed and she ultimately defaulted on the loan, making no payments. Plaintiff believed that the loan was fully secured by the trust deed and did not take immediate action. Shortly after the final payment on the note was due, Plaintiff learned that Starr's home would be sold. Starr's home was eventually sold but Plaintiff only received $21,091.06 from the sale in March 2005, as a result of existing liens on the property that had priority over Plaintiff's lien, of which Plaintiff was not made aware.

"* * * * *

"14.

"Although Plaintiff was aware that Defendant's representations regarding the stability of Starr's business and the soundness of the investment were false more than two years from the filing of this action, Plaintiff did not suffer damage as a result of said misrepresentations until she learned that the trust deed did not fully secure the loan in or about March 2005."

The professional negligence claim alleges that defendant made false representations about the soundness of the investment and the financial stability of the business. The breach of fiduciary duty claim alleges that defendant made false representations about the adequacy of the security on the loan. Plaintiff further alleges that she "did not learn of the falsity of Defendant's representation regarding the adequacy of the security for the loan until March 2005, when the property securing the loan was sold."

Defendant moved to dismiss the action under ORCP 21 A(9), arguing that the claims were barred by the two-year statute of limitations in ORS 12.110(1), particularly in light of the facts that the first payment was due on January 20, 2002, and that Starr made no payments on the loan. Plaintiff responded that the period of limitations commenced only after she learned that the collateral had been sold and there were not enough proceeds to pay the obligation owed to her by Starr. The trial court ruled that the statute of limitations on plaintiff's professional negligence claim began to run when plaintiff became aware that defendant's representations regarding the stability of Starr's business and the soundness of the investment were false and it therefore expired before plaintiff brought her claim. It also concluded that the statute of limitations on plaintiff's breach of fiduciary duty claim expired before plaintiff filed her complaint, reasoning that a reasonable person, in light of Starr's default on the loan, would have investigated the priority of the trust deed.

ORS 12.110(1) provides:

> "An action for assault * * * or for any injury to the person or rights of another, not arising on contract, * * * shall be commenced within two years; provided, that in an action * * * based upon fraud or deceit, the limitation shall be deemed to commence only from the discovery of the fraud or deceit."

Plaintiff's initial complaint was filed on August 31, 2006. Thus, plaintiff's claims are barred if she discovered her claims before August 31, 2004—two years before the filing of this action—within the meaning of the statute.

■■ In general, with respect to claims based on negligence and breach of a fiduciary duty,

> "[t]he statute of limitations begins to run when the plaintiff knows or in the exercise of reasonable care should have known facts which would make a reasonable person aware of a substantial possibility that each of the three elements [of a claim] (harm, causation, and tortious conduct) exists."

*Gaston v. Parsons*, 318 Or 247, 256, 864 P2d 1319 (1994). For purposes of this case, the "harm" to plaintiff occurred when plaintiff knew of or should have known facts that would make a reasonable person aware of the substantial possibility that she had suffered financial damages as a result of defendant's tortious conduct. *Cairns v. Dole*, 195 Or App 742, 752-53, 99 P3d 781 (2004). Until that time, the statute of limitations did not begin to run. *U.S. Nat'l Bank v. Davies*, 274 Or 663, 668, 548 P2d 966 (1976).

In *McLean v. Charles Ellis Realty, Inc.*, 189 Or App 417, 76 P3d 661 (2003), *rev den*, 337 Or 34 (2004), we were confronted with circumstances that are similar to the circumstances in this case. In that case, the plaintiff filed her action in 1999 after learning in late 1996 that misrepresentations had been made about the borrower's financial condition. We concluded, however, that there were factual issues as to when the plaintiff discovered that she had been damaged, reasoning that a jury could find that the plaintiff reasonably believed that

> "[s]he could recover her money through foreclosure. Thus there is evidence from which a jury could find that plaintiff did not learn that she had been damaged until she learned that her security interest was inadequate to cover the amount due on the loan."

189 Or App at 425-26.

Defendant argues that our decision in *McLean* is distinguishable because in that case, the loan did not become due until December 1997 and a jury could reasonably have found that, until that time, the plaintiff believed that the loan would be paid when it became due. Also, defendant points to the fact in *McLean* that the defendant continued to reassure the lender that "all was well." 189 Or App at 425.

Here, of course, plaintiff does not plead that there were any such assurances, and no payments were ever made on the loan, beginning in January 2002.

 Nonetheless, we are not persuaded by the distinctions advanced by defendant. According to plaintiff's allegations, the representation that the loan would be "fully secured" by the trust deed was integral to her reliance on defendant's advice. On the facts alleged by plaintiff, a jury could find that a reasonable person in plaintiff's circumstances could believe that, even though Starr had defaulted on the loan, the loan was fully secured and that no harm would arise from defendant's representations about the wisdom of the investment or the adequacy of the security. In other words, a jury could find that, in August 2004, a reasonable person in plaintiff's circumstances could believe that she would fully recover the total amount owed on the loan through the foreclosure of Starr's Portland home. We conclude, therefore, that plaintiff's allegations, when given the benefit of all reasonable inferences, state a claim that presents a jury question about whether the statute of limitations expired before the complaint was filed.

Reversed and remanded.