Argued and submitted October 15, 2020; reversed and remanded as to
plaintiffs' negligence claim, otherwise affirmed December 15, 2021

John M. MARSHALL
and Karen M. Marshall, individuals;
Patsy L. Marshall, an individual;
Patsy L. Marshall, as Personal Representative
of the Estate of Richard L. Marshall, Deceased;
and Marshall Associated, LLC,
an Oregon limited liability corporation,
*Plaintiffs-Appellants,*

*v.*

PRICEWATERHOUSECOOPERS, LLP,
a limited liability partnership,
*Defendant,*

*and*

SCHWABE WILLIAMSON & WYATT, P. C.,
an Oregon professional corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
17CV11907; A169635

505 P3d 40

In this complex civil case, plaintiffs appeal from a limited judgment in favor of plaintiffs' former law firm, defendant Schwabe Williamson & Wyatt, P.C. (Schwabe). On appeal, plaintiffs raise two assignments of error contending that the trial court erred in granting Schwabe's motion to dismiss plaintiffs' negligence claim as barred by the statute of repose in ORS 12.115(1). In a cross-assignment, Schwabe contends that the trial court erred in rejecting its motion to dismiss plaintiffs' negligence claim based on issue preclusion grounds. *Held*: The trial court erred in applying ORS 12.115(1) to plaintiffs' negligence claim, because ORS 12.115(1) is applicable to actions that seek recovery for "negligent injury to person or property." Plaintiffs' negligence claim only sought recovery for economic loss. As to Schwabe's cross-assignment of error, the trial court did not err in denying Schwabe's motion to dismiss on issue preclusion grounds, because the factual issues decided in the prior litigation were not identical to those raised in plaintiffs' negligence claim.

Reversed and remanded as to plaintiffs' negligence claim; otherwise affirmed.

Jerry B. Hodson, Judge.

Scott Hessell, Illinois, argued the cause for appellants.
Also on the opening brief were Sperling & Slater, P.C., Jeff

S. Pitzer, Peter M. Grabiel, and Pitzer Law. Also on the combined reply and answering on cross-assignment brief were Sperling & Slater, P.C., John J. Dunbar, and Dunbar Law LLC.

Janet M. Schroer argued the cause for respondent. Also on the combined answering and cross-assignment of error brief was Hart Wagner LLP. Also on the reply on cross-assignment of error brief were Holly E. Pettit and Hart Wagner LLP.

Before Shorr, Presiding Judge, and Powers, Judge, and Landau, Senior Judge.

SHORR, P. J.

Reversed and remanded as to plaintiffs' negligence claim; otherwise affirmed.

**SHORR, P. J.**

In this complex civil case, plaintiffs appeal from a limited judgment in favor of plaintiffs' former law firm, defendant Schwabe Williamson & Wyatt, P.C. (Schwabe). On appeal, plaintiffs raise two assignments of error contending that the trial court erred in granting Schwabe's motion to dismiss plaintiffs' negligence claim as barred by the statute of repose in ORS 12.115(1). In a cross-assignment, Schwabe contends that the trial court erred in rejecting its motion to dismiss plaintiffs' negligence claim based on issue preclusion grounds. For the reasons that follow, we conclude that the court erred in applying ORS 12.115(1) to plaintiffs' negligence claim, but did not err in denying Schwabe's motion to dismiss on issue preclusion grounds. As a result, we reverse and remand the judgment as to plaintiffs' negligence claim.[1]

## I.	FACTUAL BACKGROUND

Because both plaintiffs' first assignment of error and Schwabe's cross-assignment of error require us to review the trial court's rulings on Schwabe's motions to dismiss, we take the facts from plaintiffs' operative complaint at the time of Schwabe's motions to dismiss. Our review "is limited to the face of the pleadings. In conducting that review, we assume the truth of all allegations in the complaint and give the plaintiff, as the nonmoving party, the benefit of all favorable inferences that could be drawn from those allegations." *Kelly v. Lessner*, 224 Or App 31, 33, 197 P3d 52 (2008).[2]

---

[1] Because we agree with the argument raised in plaintiffs' first assignment of error, that the trial court erred in applying ORS 12.115(1) to plaintiffs' negligence claim against Schwabe, we need not address plaintiffs' second assignment of error, which contends that, even if ORS 12.115(1) was applicable to plaintiffs' claim, the trial court erred in concluding that ORS 12.115(1) barred the claim.

We also do not address the trial court's dismissal of plaintiffs' breach of contract claim, which plaintiffs have not challenged on appeal.

[2] Defendant contends that, "[g]iven [plaintiffs'] opportunity to replead facts alleging negligent conduct within the statute of repose period and plaintiffs' inability to do so," "[p]laintiffs are not entitled to any inferences in their favor regarding the facts alleged in the [operative complaint]" and asserts that we "must assume that the [operative complaint] already alleges all facts favorable to the plaintiffs." Defendant fails to cite any case in which we, or the Oregon Supreme Court, have modified our usual standard of review as to the facts in such a way. We find no authority supporting such a modification either. As such, we apply our usual standard of review.

We briefly summarize the relevant facts giving rise to this litigation. Plaintiffs were the sole shareholders of Marshall Associated Contractor Inc. (MAC), a heavy construction corporation that, in 1982, was awarded a contract to complete work on two separate projects in Utah. Disputes over both projects led to a lengthy 20 years of litigation, which finally ended in a 2002 court ruling awarding plaintiffs approximately $40 million.

Interested in minimizing the tax consequences of that award, in June 2002, plaintiffs began negotiating with a company called Fortrend that proposed to purchase all of MAC's stock and assume all its liabilities, including the expected federal and state taxes associated with the $40 million award.[3] Plaintiffs' complaint explains:

> "Fortrend claimed, among other things, that MAC's remaining assets would facilitate Fortrend's 'debt-collection' business, and that Fortrend would employ MAC's tax liabilities to legitimately offset tax deductions associated with its debt-collection business. As a result, Fortrend said, Plaintiffs would realize a greater net return on its investment in MAC than would otherwise be the case if MAC simply distributed its assets to the shareholders."

Plaintiffs engaged their usual attorneys from the preceding 50 years, Schwabe, in spearheading an evaluation of the proposed deal. Plaintiffs' accountants, Pricewaterhouse-Coopers (PwC), also participated in the evaluation.[4] Specifically, plaintiffs engaged Schwabe and PwC to examine all legal and tax implications of the proposed transaction, advise plaintiffs on whether the transaction complied with applicable laws, and advise plaintiffs as to whether the transaction created a risk of greater tax liabilities beyond what would be expected from a simple stock sale. Schwabe and

---

[3] Ultimately, plaintiffs assert that MAC's stock was purchased by Essex Solutions Inc., an entity jointly owned by Fortrend and another company, Midcoast. Plaintiffs' advisors negotiated with representatives of Fortrend, Essex, and Midcoast during the period in which the transaction was evaluated and consummated. For simplicity's sake, we refer to the buyer in this transaction as Fortrend, because the distinct roles played by those three involved entities are not important to our analysis.

[4] PwC is not a party to this appeal, and we explain its role in the case only to the extent necessary to clarify the facts and address the parties' arguments on appeal.

PwC also communicated and negotiated with Fortrend on plaintiffs' behalf and were tasked with handling all aspects of consummating the deal if approved. Plaintiffs assert that they "wanted to avoid any potential controversy or litigation," informed their advisors of that position, and would not have entered the transaction had they been advised or believed that the transaction did not comply with the law.

Schwabe and PwC proceeded to investigate the proposed transaction. Plaintiffs assert that Schwabe quickly identified a risk that the transaction could be challenged as a fraudulent transfer in a bankruptcy proceeding, but ultimately concluded that it was unlikely such a challenge would be successful and did not inform plaintiffs of its research. Plaintiffs also assert that Schwabe became aware of a risk that, if Fortrend did not pay MAC's taxes, plaintiffs could be held liable for any unpaid tax liability as transferees, but did not believe such a challenge would be successful and did not communicate their concerns to plaintiffs at that time. In all, both advisors identified potential tax risks associated with the transaction but viewed them as "minimal." Plaintiffs assert that Schwabe and PwC "both recommended that [plaintiffs] go forward with the proposed transaction."

In January 2003, plaintiffs decided to go through with the Fortrend transaction. Schwabe handled all aspects of negotiating and consummating the transaction with PwC's assistance. Following the close of the transaction in March 2003, both advisors continued to represent plaintiffs in matters related to the transaction, its tax and accounting implications, and plaintiffs' communications with the IRS. Plaintiffs contend that, during that period, Schwabe never advised plaintiffs that their earlier advice regarding the transaction's risks may have been flawed or that plaintiffs were at risk for additional tax liability. After closing the transaction, Schwabe wrote to plaintiffs to summarize the transaction and enclose its final bill, stating in part that it believed that it was unlikely the transaction would be challenged as a fraudulent transfer and that any risk plaintiffs faced was "minimal."

Plaintiffs assert that they later discovered the Fortrend transaction was an "improper tax-avoidance" mechanism known as a "Midco" transaction. Although such transactions were apparently marketed to shareholders as a legitimate method for avoiding federal income taxes through the 1990s, in 2001 the IRS issued Notice 2001-16, which made certain Midco transactions "listed transactions" subject to IRS challenge and penalties. Intermediary Transactions Tax Shelter, Notice 2001-16, 2001-1 CB 730 (2001). Plaintiffs contend that Schwabe never advised them of Notice 2001-16 or the IRS's position on similar transactions.

As a result of plaintiffs' participation in the transaction, plaintiffs were subject to an IRS investigation that in August 2011 resulted in a determination that plaintiffs were liable to the IRS for over $20 million in back taxes, penalties, and interest. In June 2016, the United States Tax Court ruled that plaintiffs were responsible for the taxes, penalties, and interest based on a theory of transferee tax liability, concluding that plaintiffs had constructive knowledge that MAC's taxes would not be paid. *Estate of Marshall v. C.I.R.*, 111 TCM (CCH) 1579, 2016 WL 3460226 (2016), *aff'd sub nom Marshall v. C.I.R.,* 782 F Appx 565 (9th Cir 2019), *cert den*, ___ US ___, 140 S Ct 1270 (2020).

In March 2017, plaintiffs filed suit against advisors PwC and Schwabe, alleging various claims including the negligence claim at issue before us. Plaintiffs alleged that Schwabe negligently advised plaintiffs in connection with the Fortrend transaction, failed to communicate to them and advise them of the relative risks and benefits of the transaction, and failed to adequately protect plaintiffs' interests. In particular, plaintiffs contend that Schwabe failed to properly advise plaintiffs of the risk that the transaction was a "listed transaction" that could be challenged by the IRS and result in plaintiffs' transferee liability for substantial taxes, penalties, and interest. Plaintiffs contend that they would not have proceeded with the transaction but for Schwabe's negligence. They claimed damages in the form of attorney fees and costs associated with "deal[ing] with the IRS and ODR claims of transfer tax liability," fees paid to Schwabe for its representation in the transaction, and the entirety of plaintiffs' assessed transferee liability.

## II.  PLAINTIFFS' FIRST ASSIGNMENT OF ERROR

We begin with a consideration of plaintiffs' first assignment of error, which asserts that the trial court erred in granting Schwabe's motion to dismiss on the grounds that the statute of repose in ORS 12.115(1) applied to and barred plaintiffs' negligence claim against Schwabe. Having summarized the factual background of the case, we turn to the procedural facts relevant to plaintiffs' first assignment of error.

### A.  *Relevant Procedural History*

Schwabe moved under ORCP 21 A(9) to dismiss plaintiffs' negligence claim as untimely. Schwabe contended that the 10-year statute of ultimate repose contained in ORS 12.115(1) barred the claim, and cited *Withers v. Milbank*, 67 Or App 475, 678 P2d 770 (1984), for the proposition that ORS 12.115(1) applies to legal malpractice claims. Specifically, Schwabe contended that "the alleged negligent conduct occurred no later than March 7, 2003—the date the *** transaction closed." Plaintiffs' lawsuit was filed on March 21, 2017, over 14 years later. Plaintiffs opposed the motion, arguing, in part, that "the ORS 12.115(1) statute of repose does not apply to actions, like this one, seeking to recover for exclusively economic losses."

The trial court granted Schwabe's motion to dismiss plaintiffs' negligence claim, concluding that ORS 12.115(1) applied to the claim because it was a legal malpractice claim. The court granted plaintiffs the opportunity to replead "an act of negligence by Schwabe that occurred after March 21, 2007." Plaintiffs declined to replead and this timely appeal followed.

### B.  *Analysis*

Plaintiffs contend that the trial court erred in granting Schwabe's motion to dismiss plaintiffs' negligence claim on the grounds that ORS 12.115(1) barred the claim. We review that ruling for legal error. *Zsarko v. Angelozzi*, 281 Or App 506, 508, 385 P3d 1239 (2016), *rev den*, 361 Or 312 (2017).

On appeal, plaintiffs reprise their arguments made before the trial court. They contend that ORS 12.115(1)

does not apply to their negligence claim against Schwabe. ORS 12.115(1) applies a 10-year repose period to "action[s] for negligent injury to person or property," while plaintiffs' negligence claim against Schwabe, they contend, only asserts a claim for financial losses. Plaintiffs cite *Securities-Intermountain v. Sunset Fuel*, 289 Or 243, 611 P2d 1158 (1980), a Supreme Court case interpreting "injuries to a person or to property" in ORS 12.135(1) (1971), and *Portland Trailer & Equipment v. A-1 Freeman Moving*, 166 Or App 651, 5 P3d 604, *adh'd to as modified on recons*, 168 Or App 654, 4 P3d 741 (2000) (*Portland Trailer*), a case from this court interpreting "injury to person or property" in ORCP 4 C. Both cases, plaintiffs claim, support their contentions that economic or financial losses are distinct in kind from personal or property injuries and that ORS 12.115(1) "does not include the mutually exclusive term 'economic loss.'"

In turn, defendant asserts that the trial court did not err in determining that ORS 12.115(1) applies to legal malpractice claims such as the one at issue here. In support of that contention, defendant cites *Davis v. Somers*, 140 Or App 567, 915 P2d 1047, *rev den*, 324 Or 78 (1996), and *Withers*, 67 Or App 475, two of our past cases that applied ORS 12.115(1) to legal malpractice claims. Defendant argues that *Securities-Intermountain* and *Portland Trailer* are irrelevant because they interpreted other statutes, not ORS 12.115. And while defendant concedes that there is an established distinction between injuries to "person or property" and economic losses, it contends that that distinction is only relevant to the duty of care in negligence actions, "not *** the interpretation of statutes imposing statutes of limitation or repose on negligence claims." Finally, defendant asserts that legislative history supports that ORS 12.115 was intended to encompass all tort claims, including legal malpractice claims.

In reply, plaintiffs contend that defendant misconstrues their argument. They do not argue that ORS 12.115 *never* applies to legal malpractice claims; instead, they only argue that ORS 12.115 does not apply to *this particular* legal malpractice claim that seeks to recover for only economic loss. In plaintiffs' view, ORS 12.115(1) turns on the type of injury and not on the theory of legal liability. Further,

plaintiffs contend that *Withers* and *Davis* do not control here because the claims in *Withers* and *Davis* implicated property rights; their claim, they contend, does not. And, to the extent that the legislative history surrounding ORS 12.115 may appear to support defendant's position, plaintiffs contend, such an interpretation is in conflict with the plain text of the statute.

Thus, the question before us is whether ORS 12.115(1) applies to plaintiffs' legal malpractice claim, which seeks to recover for the economic losses plaintiffs suffered as a result of the Fortrend transaction. That presents a question of statutory construction for which we examine the statute's text in context, as well as legislative history if relevant. *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009) (outlining the methodology). "The pertinent context includes other provisions of the same statute and other related statutes, as well as the preexisting common law and the statutory framework within which the statute was enacted." *Bell v. Tri-Met*, 353 Or 535, 540, 301 P3d 901 (2013) (internal quotation marks omitted).

ORS 12.115 was passed in response to *Berry v. Branner*, 245 Or 307, 421 P2d 996 (1966), where the Supreme Court held that "the statute of limitations in a medical malpractice case, involving a foreign object left in the body cavity of a surgery patient, did not commence to run until such time as the object was discovered, or, in the exercise of reasonable care, should have been discovered by the patient." *Josephs v. Burns & Bear*, 260 Or 493, 496, 491 P2d 203 (1971) (summarizing *Berry*). The legislature responded to *Berry* by enacting Oregon Laws 1967, chapter 406, section 1, which codified the *Berry* discovery rule and enacted a repose period for medical malpractice actions that required that such actions be commenced within an overall seven-year period "from the time of the treatment, omission or operation upon which the action was based," regardless of whether or when the injury was actually discovered. *Josephs*, 260 Or at 497. The legislature also enacted Oregon Laws 1967, chapter 406, section 2, which became ORS 12.115. ORS 12.115(1), which has never been amended, states that "[i]n no event shall *any action for negligent injury to person or property of another* be commenced more than 10 years from the date of the act or

omission complained of." (Emphasis added.) Four years later in *Josephs*, the Supreme Court construed ORS 12.115(1) for the first time and held that it barred an action that alleged that architect and engineer negligence had caused a roof to collapse 17 years after its construction. 260 Or at 495-96.

In later years, other statutes of repose were passed to apply to other particular types of actions. *See, e.g.*, ORS 12.135 (six- or 10-year repose period for actions arising from construction, alteration, or repair of improvements to real property; enacted in 1971); ORS 12.280 (10-year repose period for actions arising out of the survey of real property; enacted in 1995). However, ORS 12.115(1) remained the statute governing actions for negligent injuries to persons or property generally that were not governed by other laws. *See, e.g.*, *Shell v. Schollander Companies, Inc.*, 265 Or App 624, 633, 336 P3d 569 (2014), *aff'd*, 358 Or 552, 369 P3d 1101 (2016).

We have applied ORS 12.115(1) to legal malpractice claims. We first did so in *Withers*, a case involving a claim against an attorney for alleged negligence in the drafting of an antenuptial agreement. 67 Or App at 477. Although the spouses had allegedly intended for the agreement to apply in the event of either divorce or death, the final agreement failed to "provide for the contingency of divorce." *Id.* The marriage was subsequently dissolved, and a decree was entered "providing for certain payments to be made by plaintiff to his former wife and for a division of the parties' property." *Id.* Shortly thereafter, the plaintiff filed a legal malpractice action seeking $290,000 in damages.[5] *Id.* We concluded that "[t]here is no reason to treat legal malpractice actions differently than other types of negligence" and determined that ORS 12.115(1) barred the claim. *Id.* at 478. We did not analyze the statute's "injury to person or property" language, however.

---

[5] Our opinion in *Withers* did not clarify the nature of the $290,000 in damages sought by the plaintiff. The damages may have related to tangible property the plaintiff lost in the property division, reimbursement for the "payments" he had been ordered to pay his former wife, or both. Likewise, it is unclear whether the "certain payments" plaintiff had been ordered to pay as part of the dissolution decree took the form of spousal support or were an aspect of the property division itself. Regardless, the plaintiff's legal malpractice action at issue in *Withers* related to the division of property implemented in the dissolution decree.

We again applied ORS 12.115(1) to another legal malpractice claim in *Davis*, 140 Or App 567. In that case, the plaintiffs asserted that they were the intended residuary beneficiaries of a will, but that the drafting attorney had negligently failed to include any residuary clause. *Id.* Unlike in *Withers*, we briefly addressed the statute's "injury to person or property" language:

> "Plaintiffs next argue that ORS 12.115(1) does not apply because theirs is not an action for 'injury to person or property,' but rather, theirs is an action for injury to their 'rights' under the intended disposition of [the testator's] estate. Their 'rights,' however, relate to the ownership and disposition of property. The argument has no merit."

*Id.* at 571.

Having reviewed the plain text of ORS 12.115(1), as well as our prior opinions in *Withers* and *Davis*, we conclude that, despite defendant's arguments to the contrary, those cases do not stand for the proposition that ORS 12.115(1) applies to all legal malpractice actions regardless of the type of injury claimed. First, the express terms of ORS 12.115 make it applicable to actions for "negligent injury to person or property of another." That language does not describe any conceivable legal malpractice claim *regardless* of what type of injury it seeks recovery for—to state the obvious, it is limited to "injur[ies] to person or property." If it applied to all legal malpractice claims regardless of injury, the inclusion of the phrase "injury to person or property" would be wholly superfluous. *See, e.g.*, *State v. Stamper*, 197 Or App 413, 418, 106 P3d 172, *rev den*, 339 Or 230 (2005) ("[W]e assume that the legislature did not intend any portion of its enactments to be meaningless surplusage."). Second, *Withers* and *Davis* concluded that ORS 12.115(1) applied to the legal malpractice claims at issue in those cases—claims which asserted injuries to property resulting from the negligent drafting of an antenuptial agreement and a will, respectively. Although our opinion in *Withers* was brief in its description of the claim, it is nevertheless clear that the asserted injury was the unintended distribution of property that resulted when the marriage dissolution was finalized. In *Davis*, the asserted injury was, similarly, the unintended distribution of property that resulted when the will was probated, and we

stated affirmatively that such a claim asserted an "injury to property" within the purview of ORS 12.115(1) because it "relate[d] to the ownership and disposition of property." 140 Or App at 571. At bottom, both *Withers* and *Davis* involved injuries to property, or at least injuries to an interest in property. Those rulings, while informative, provide limited guidance for whether ORS 12.115(1) applies when a legal malpractice claim asserts a purely financial loss that does not appear to involve physical damage to tangible property or implicate the ownership or disposition of property. For those reasons, further analysis is required to determine whether ORS 12.115(1) applies to plaintiffs' claim.

        Plaintiffs correctly note that the "injury to person or property" language adopted in ORS 12.115(1) has been used in other statutes since the enactment of ORS 12.115, and we agree that it is appropriate to consider those statutes and any prior constructions as instructive to our construction of ORS 12.115(1). Of particular import is the Supreme Court's opinion in *Securities-Intermountain*, 289 Or 243, in which the court construed ORS 12.135(1) (1971),[6] the statute then setting limitation and repose periods for actions "for injuries to a person or to property" arising from the construction, alteration, or repair of real property improvements. The court noted that, unlike the statutes of limitations delineated in ORS 12.080(1) and ORS 12.110(1), ORS 12.135(1) "does not define its coverage by the legal source or nature of the liability on which the action is founded but on the character of the injuries incurred in a specified context." *Id.* at 247. The court then turned to the question of "whether ORS 12.135 applies to a claim of financial losses from alleged breaches of contract by the persons so engaged." *Id.* Considering the case law interpreting the statute and the statute's legislative history, the court concluded that

   "the phrase 'injuries to *** person[s] or to property' was thought to encompass what is commonly meant by 'personal injuries,' i.e. bodily injuries including their psychic consequences, and physical damage to existing tangible

---

[6] ORS 12.135(1) has been amended numerous times since the Supreme Court's discussion of the statute in *Securities-Intermountain*. However, those amendments are not relevant here, and we cite the 1971 version throughout our discussion.

property, but not financial losses such as a reduced value of the completed project due to the unsatisfactory performance of the work or the added cost of satisfactory completion or replacement."

*Id.* at 251.[7] The court eventually concluded that the statute of limitations in ORS 12.080(1), not ORS 12.135, applied to that action. *Id.* at 262.

We applied a similar analysis in *Portland Trailer*, 166 Or App at 655. In that case, the plaintiffs had initiated an action for wrongful use of a civil proceeding to recover attorney fees associated with defending a separate Oklahoma action. *Id.* at 654. The trial court had granted the defendants' motion to dismiss for want of personal jurisdiction. *Id.* On appeal, we considered whether ORCP 4 established the defendants' jurisdiction in Oregon. *Id.*

As relevant here, we considered whether the plaintiffs in *Portland Trailer* had established personal jurisdiction under ORCP 4 C, which, since 1978, has provided that an Oregon court has jurisdiction over a party "[i]n any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant." *Id.* We concluded that the plaintiffs had not established jurisdiction pursuant to that subsection:

"ORCP 4 C applies only to claims for personal injury or injury to property. The rule does not mention damages arising from economic loss. Although not defined in ORCP 4, each of the foregoing types of damage has a well established and mutually exclusive legal meaning. The term 'economic loss' describes financial losses such as indebtedness incurred and return of monies paid, as distinguished from damages for injury to person or property. Plaintiffs' complaint does not allege damages for personal injury or injury to property. Instead, it only seeks damages for

---

[7] We note, briefly, that there may appear to be some inconsistencies in how Oregon courts have defined "injury to property." *Compare, e.g.*, *Securities-Intermountain*, 289 Or at 251 (defining injury to property as "physical damage to existing tangible property"), *with Davis*, 140 Or App at 571 (concluding that injury to the plaintiffs' rights under the intended disposition of a testator's estate was an "injury to property" because the rights "relate[d] to the ownership and disposition of property"). However, those varying definitions do not affect our analysis in the instant case. As we explain below, plaintiffs' legal malpractice claim does not assert an "injury to property" under either definition.

*economic loss* in the form of attorney fees incurred as a result of defendants' conduct."

*Id*. at 655 (emphasis in original; internal citations omitted).

Both *Securities-Intermountain* and *Portland Trailer* relied on the distinction between purely economic loss and injuries to persons or property that has long been the basis of the economic loss doctrine, which "bars a party that has suffered a purely economic loss from bringing a negligence action against the party that caused the loss, unless there is a special relationship between the parties." *Harris v. Suniga*, 344 Or 301, 305, 307, 180 P3d 12 (2008) (explaining the common law origins of the economic loss doctrine).[8]

> "For purposes of the economic loss doctrine, 'economic losses' means 'financial losses,' as distinguished from 'damages for injury to person or property.' *Harris*, 344 Or at 306 (citation omitted). Some examples of purely economic losses include a reduced stock price, a monetary gift to a beneficiary, a debt incurred, and return of monies paid. *Id*. at 310. By contrast, when negligence results in personal injury or property damage, the loss is not 'purely economic'—and the economic loss doctrine does not apply—even though the plaintiff may seek compensation for resulting economic losses, such as medical expenses or repair costs. *See id*. ('Every physical injury to property can be characterized as a species of "economic loss" for the property owner, because every injury diminishes the financial value of the property owner's assets,' but 'the law ordinarily allows the owner of [a] damaged car or residence to recover in negligence from the person who caused the damage.')."

*Lansing v. John Does 1-5*, 300 Or App 803, 807-08, 455 P3d 541 (2019) (brackets in original). Defendant contends that the economic loss doctrine is primarily relevant to the question of whether a defendant to a negligence action owed the requisite duty of care required to support the claim. But that does not mean that the distinction between economic

---

[8] Although the economic loss doctrine does not appear to have been acknowledged or applied in Oregon prior to the Supreme Court's decision in *Snow v. West*, 250 Or 114, 440 P2d 864 (1968), the doctrine had been widely recognized at common law long before then. *See Ore-Ida Foods v. Indian Head*, 290 Or 909, 916 & nn 5-10, 917 & nn 11-14, 627 P2d 469 (1981) (detailing the history of the economic loss doctrine in the United States and England and citing cases applying that rule from numerous jurisdictions going back to 1856).

loss and property injuries is irrelevant in other areas. *Securities-Intermountain* and *Portland Trailer* elucidate that. And although *Securities-Intermountain* and *Portland Trailer* both construe provisions enacted after ORS 12.115 was passed in 1967, and both cases were obviously decided after ORS 12.115 was enacted as well, they remain relevant to our construction of ORS 12.115(1). Those constructions reflect the "plain, natural, and ordinary meaning" of the "injury to person or property" language used in ORS 12.115(1). *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (explaining that "words of common usage typically should be given their plain, natural, and ordinary meaning").

Thus, we conclude that ORS 12.115(1) is applicable to actions for "negligent injury to person or property," but not to actions seeking only recovery for economic loss, as those terms have been defined in our case law. Further, we conclude that the legislative history of ORS 12.115 does not mandate a contrary result. As explained earlier, ORS 12.115 was passed in response to *Berry*, which created a discovery rule applicable to the statute of limitations for medical malpractice claims. *Josephs*, 260 Or at 496-97. The legislature responded by, among other things, creating Oregon's first statutes of repose setting maximum time limits for certain claims regardless of when the injury was or should have been discovered—one applicable to medical malpractice claims specifically, and the other more generally applicable to "any action for negligent injury to person or property of another." ORS 12.115(1); *DeLay v. Marathon LeTourneau Sales*, 291 Or 310, 315, 630 P2d 836 (1981) (summarizing that history). Defendant contends that the legislative history of ORS 12.115 "establishes that the legislature was specifically concerned about unlimited statutes of limitations for other types of professional negligence claims to which a discovery rule might apply" and gives "*no* indication \* \* \* that the legislators were cognizant of or made any distinction between the types of damages sought in the different types of tort cases to which the statute of repose would apply." (Emphasis in original.) Indeed, the legislative history indicates that in passing ORS 12.115, the legislature considered at least some other types of professional negligence

claims. *See, e.g.*, Tape Recording, House Committee on Judiciary, SB 134, Apr 19, 1967, Tape 79 (discussing professional negligence claims against architects and engineers). But regardless of what types of claims the legislature may have envisioned when enacting ORS 12.115, the reality is that the plain text of the enacted statute applies only to actions for "negligent injury to person or property"; ORS 12.115(1) is limited to claims that cause certain types of injuries. And, the legislature chose that specific language as part of a bill that also amended ORS 12.110, which, both then and now, includes a provision applicable to actions "for any injury to the person or rights of another, not arising on contract." ORS 12.110(1); Or Laws 1967, ch 406, § 1. We cannot ignore the fact that the legislature chose to forgo the broader language previously adopted in ORS 12.110(1) when it enacted ORS 12.115(1) and instead adopted narrower language.

We recognize that some past cases discussing and applying ORS 12.115(1) used language that could be seen to imply that ORS 12.115(1) sets a repose period for certain actions regardless of injury. *See DeLay*, 291 Or at 314 (describing ORS 12.115 as "the statute of repose for negligent injuries generally"); *Josephs*, 260 Or at 499 (describing ORS 12.115(1) as establishing "an ultimate cut-off date * * * for the commencement of tort claims litigation"); *Shell*, 265 Or App at 633 (describing ORS 12.115 as the repose statute "govern[ing] actions for negligence that are not governed by other laws"); *Withers*, 67 Or App at 478 (applying ORS 12.115(1) to "legal malpractice actions"). However, it is also true that in all those cases, the claims at issue were claims for "injury to person or property." We have found no case, and the parties have cited none, that has ever asserted that ORS 12.115(1) should apply even when no injury to person or property is implicated and when the action seeks to recover for economic loss alone.

Defendant submits that "[a]ttorneys, clients and their insurers have relied on the application of ORS 12.115 to legal malpractice for decades, and structured their business accordingly on matters including tail coverage rates, file closure and destruction policies," and that "[c]hanging

the interpretation of ORS 12.115(1) as plaintiffs request would be contrary to the expectations of attorneys, clients, and insurers." However, no case has ever stated that ORS 12.115(1) applies to all legal malpractice claims regardless of the type of injury asserted. Although we acknowledge those whose expectations may be unsettled by our construction of ORS 12.115(1), we also must interpret statutory provisions in a fashion that gives primary weight to the statute's text and context. *Gaines*, 346 Or at 171-73. Policy considerations may not take precedence over a statute's plain text, and here ORS 12.115(1) plainly states that it applies to actions "for negligent injury to person or property." As the Supreme Court explained in *Securities-Intermountain* in reference to the "injuries to a person or to property" language then contained in ORS 12.135(1), that language defines its coverage "on the character of the injuries incurred." 289 Or at 247. The same is true for the language of ORS 12.115(1).

Thus, ORS 12.115(1) applies only to actions for "injury to person or property." Having considered the text and context of that statute as well as legislative history, we conclude that ORS 12.115(1) does not apply to actions that seek recovery for purely economic loss, which is "mutually exclusive" from injuries to persons or property, and which we have previously defined to include "financial losses such as indebtedness incurred and return of monies paid." *Portland Trailer*, 166 Or App at 655. Plaintiffs' claim against Schwabe is an action to recover legal fees associated with the Fortrend transaction and later IRS investigation and litigation, as well as the financial losses plaintiffs suffered when they were found liable to the IRS for over $20 million in back taxes, penalties, and interest. Those injuries fit firmly within our established definition of "economic loss" and form a claim that seeks recovery for "indebtedness incurred [or] return of monies paid." *Id.* Plaintiffs' claim does not assert any "injury to person or property," because it does not implicate physical damage to existing tangible property or relate to the ownership and disposition of property. Thus, the trial court erred in granting defendant's motion to dismiss plaintiffs' negligence claim on the grounds that it is barred by ORS 12.115(1).

### III.  DEFENDANT'S CROSS-ASSIGNMENT OF ERROR

We next turn to defendant's cross-assignment of error, in which defendant contends that the trial court erred in denying its motion to dismiss plaintiffs' negligence claim on issue preclusion grounds. Again, "we assume the truth of all allegations in the complaint and give the plaintiff, as the nonmoving party, the benefit of all favorable inferences that could be drawn from those allegations." *Kelly*, 224 Or App at 33.

### A.  *Relevant Procedural History*

We briefly describe the procedural facts relevant to defendant's cross-assignment of error. At the same time that Schwabe moved under ORCP 21 A(9) to dismiss plaintiffs' negligence claim as untimely pursuant to ORS 12.115(1), Schwabe also moved under ORCP 21 A(8) to dismiss plaintiffs' claims as barred by issue preclusion. Schwabe argued that plaintiffs' allegations of negligence were in direct conflict with the factual findings of the 2016 United States Tax Court decision that determined that plaintiffs were liable to the IRS as transferees. *Estate of Marshall*, 2016 WL 3460226. Schwabe contended that plaintiffs had already litigated the factual issues of what they had been advised and what they appreciated or knew prior to entering the transaction; that contrary to plaintiffs' allegations, the tax court found that Schwabe and PwC both advised plaintiffs of the risks associated with the transaction; and that finally, those findings were critical and necessary to the tax court's judgment. Defendant PwC also moved to dismiss plaintiffs' negligence claim against PwC based on similar arguments. Both defendants pointed to the tax court's findings that PwC had warned plaintiff John Marshall that the proposed transaction was similar to a listed transaction and had advised that plaintiffs not engage in it. In opposition to both motions, plaintiffs asserted, among other arguments, that the tax court had not resolved the questions presented by plaintiffs' claims and had not considered whether the advisors had breached their professional duties to plaintiffs.

The trial court first determined that the tax court decision had preclusive effect as to plaintiffs' negligence claim against PwC. In dismissing that claim, the court noted that "it was critical to [the tax court's] holding in the case that [plaintiffs] were warned by PwC that the stock sale was similar to a listed transaction and advised *** not to engage in the stock sale." Considering those findings, the court concluded that plaintiffs could not "assert the essential elements" of negligence against PwC. However, as to Schwabe, the court "fe[lt] differently." The court explained that "the [tax] court was not assessing whether or not [Schwabe] met the standard of care of *** an attorney in those circumstances," and stated that it could not infer from the tax court findings "what specifically was said about the risks of transferee liability, how strongly it was said, [or] what other things were said in that context." In response to a request for clarification from Schwabe's counsel, the court added that

"all I know at this point is that risks were discussed. I don't know anything about how they were discussed. What I know about *** PwC is they said don't enter this transaction. The tax court did not say the same thing about Schwabe.

"* * * * *

"*** [T]here's nothing in the tax court opinion that tells me that [plaintiffs] were told by Schwabe the level of those risks to the point where they shouldn't have proceeded with the transaction. I know nothing about the details. The difference—and the reason that I come out where I do with PwC is because PwC said don't do the transaction. I cannot see how anyone can be held liable who tells somebody not to do a transaction. That's not—there's nothing in the tax court opinion that says Schwabe told the plaintiff don't do this transaction."

B. *Analysis*

Schwabe assigns error to the denial of its motion to dismiss plaintiffs' negligence claim on issue preclusion grounds. "We review whether the trial court erred in applying issue preclusion for errors of law." *Berg v. Benton*, 297 Or App 323, 327, 443 P3d 714 (2019).

The parties essentially reprise the arguments made in the trial court. Schwabe asserts that "[t]he tax court findings *** are identical to issues that plaintiffs must prove to prevail on their negligence claim. Additionally, those findings were actually litigated and were necessary to the tax court's imposition of transferee liability." Schwabe points to the tax court's findings that Schwabe told plaintiffs that, if Fortrend "took steps to render MAC unable to pay its tax liability, the IRS could pursue transferee liability" against plaintiffs, and "discussed the risk of transferee liability with [plaintiffs]" before the transaction closed. Those findings, Schwabe asserts, leave plaintiffs unable to "prove the facts necessary to establish that [Schwabe] breached a duty to advise plaintiffs of the risks associated with" the transaction. Schwabe also points to the tax court's findings that PwC told plaintiff John Marshall that the stock sale was similar to a listed transaction, explained what a listed transaction was, and advised against the stock sale. Schwabe contends that those findings establish that plaintiffs were aware of the transaction's significant risks and preclude plaintiffs from proving the causation element of their negligence claim against Schwabe, regardless of how plaintiffs came to that knowledge. In Schwabe's view, the trial court's ruling that issue preclusion barred plaintiffs' negligence claim against PwC "necessarily requires" the same ruling as to plaintiffs' negligence claim against Schwabe.

In response, plaintiffs assert that the trial court's ruling was not erroneous. Among other arguments, plaintiffs contend that the ultimate issue raised in their negligence claim against Schwabe "was not addressed by the tax court and was not essential to the merits of the tax court's decision." Plaintiffs also argue that the trial court's issue preclusion ruling as to PwC has little bearing on whether *Schwabe* was negligent and whether that negligent advice caused plaintiffs' damages.

We begin with the legal principles that control our analysis, starting with issue preclusion. "Issue preclusion arises in a subsequent proceeding when an issue of ultimate fact has been determined by a valid and final determination

in a prior proceeding." *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103, 862 P2d 1293 (1993).[9]

> "If one tribunal has decided an issue, the decision on that issue may preclude relitigation of the issue in another proceeding if five requirements are met:
>
> "1.   The issue in the two proceedings is identical.
>
> "2.   The issue was actually litigated and was essential to a final decision on the merits in the prior proceeding.
>
> "3.   The party sought to be precluded has had a full and fair opportunity to be heard on that issue.
>
> "4.   The party sought to be precluded was a party or was in privity with a party to the prior proceeding.
>
> "5.   The prior proceeding was the type of proceeding to which this court will give preclusive effect."

*Id.* at 104 (internal citations omitted).

In this case, the parties primarily dispute whether the first requirement was established—whether the tax court decided ultimate fact issues that are essential to plaintiffs' negligence claim against Schwabe, such that issue preclusion bars the relitigation of those issues. We thus first examine in detail what issues the tax court decided.

In *Estate of Marshall*, the tax court was tasked with determining whether plaintiffs were liable as transferees for their MAC's unpaid federal income tax liability, plus accompanying penalties and interest. 2016 WL 3460226 at *1. That determination required the court to consider whether the various transfers that made up the Fortrend transaction should be "collapsed." *Id.* at *11-12. The court applied the legal standard used in "jurisdictions with fraudulent transfer provisions similar to Oregon's" and asked whether

---

[9] "The general rule is that the preclusive effect to be given to a judgment is determined by the law of the jurisdiction in which the judgment was rendered," and for that reason, "state courts generally are bound by federal law in determining the preclusive effect of federal court judgments." *Aguirre v. Albertson's*, 201 Or App 31, 46, 117 P3d 1012 (2005). However, there are "few or no differences" between federal and Oregon preclusion principles, and our past cases have applied both Oregon and federal case law in analyzing whether preclusion arises from a prior federal judgment. *Id.*; *see also Durham v. City of Portland*, 181 Or App 409, 424-26, 45 P3d 998 (2002).

plaintiffs "had constructive knowledge that the debtor's debts would not be paid." *Id.* at *11. The court explained the standard:

> "Finding that a person had constructive knowledge does not require finding that he had actual knowledge of the plan's minute details. It is sufficient if, under the totality of the surrounding circumstances, he 'should have known' about the tax-avoidance scheme. *HBE Leasing Corp. v. Frank*, 48 F3d 623, 636 (2d Cir 1995).
>
> "Constructive knowledge also includes 'inquiry knowledge.' Constructive knowledge may be found where the initial transferee became aware of circumstances that should have led to further inquiry into the circumstances of the transaction, but no inquiry was made. *Id.* Some cases define constructive knowledge as the knowledge that ordinary diligence would have elicited, while others require more active avoidance of the truth. [*Diebold Foundation, Inc. v. C.I.R.*, 736 F3d 172, 187 (2d Cir 2013)]."

*Id.* at *12.

The tax court concluded that plaintiffs had "constructive knowledge" of the scheme regardless of which definition of "constructive knowledge" was applied. *Id.* The court first explained that its analysis focused "on what [plaintiff John Marshall] knew," due to his assumed role as representative for the remaining plaintiffs in communications regarding the transaction, as well as "what [plaintiffs] were advised and what they themselves appreciated." *Id.* The court then determined that plaintiffs, Schwabe, and PwC "had constructive knowledge of the entire scheme." *Id.*

The court noted certain findings that were relevant to its analysis. The court found that plaintiff John Marshall "knew that [Fortrend] was interested in buying MAC only for its tax liability; that [Fortrend] intended to use high-basis low-value assets to offset MAC's income; that [Fortrend] intended to obtain a refund of MAC's prepaid taxes, a plan he was leery about; and that [Fortrend] was splitting MAC's avoided taxes with [plaintiffs]. *Id.* The court found that Schwabe had advised each of the plaintiffs before the transaction closed that they faced a risk of transferee liability. *Id.* Additionally, the court found that

John Marshall "was warned by PwC that the stock sale was similar to a listed transaction and was advised by PwC not to engage in the stock sale." *Id.* The court also found that plaintiffs were motivated to enter into the transaction as a way to mitigate the resulting tax liability from the 2002 litigation award, and that they had received promotional materials from Fortrend that referenced IRS Notice 2001-16. "Given this reference [in the promotional materials] and especially PwC's warning to John [Marshall], the Marshalls and [Schwabe] were or should have been on heightened alert for other red flags." *Id.*

Finally, the court cited the legal standard applied in *Diebold Foundation, Inc.*, stating that, "if the advisers knew or should have known then the transferee is deemed to have had the same knowledge and had a duty to inquire." *Id.* at *13 (citing 736 F3d at 188-90). The tax court explained that John Marshall, PwC, and Schwabe were "analogous to the advisers" in *Diebold Foundation, Inc.* and that the remaining Marshall plaintiffs Richard, Patsy, and Karen were "akin to the shareholders in that case." *Id.* The court concluded that plaintiffs had a duty to inquire and were liable as transferees. *Id.*

We now turn to plaintiffs' negligence claim against Schwabe.

> "[In a] legal malpractice action, as in other tort actions in which there is a special relationship between the plaintiff and the defendant, the plaintiff usually must allege and prove (1) a *duty* that runs from the defendant to the plaintiff; (2) a *breach* of that duty; (3) a resulting *harm* to the plaintiff measurable in damages; and (4) *causation*, *i.e.*, a causal link between the breach of duty and the harm."

*Stevens v. Bispham*, 316 Or 221, 227, 851 P2d 556 (1993) (emphases in original). An attorney's duty of care to a client is "to act as a reasonably competent attorney in protecting and defending the interests of the client." *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 160, 843 P2d 890 (1992). In legal malpractice cases, juries "often require[] expert evidence setting forth the appropriate standard of care owed by a reasonable attorney and how the defendant failed to uphold that standard." *Pereira v. Thompson*, 230 Or

App 640, 654, 217 P3d 236, 247 (2009). To prove causation, a plaintiff must show "that the result would have been different except for the negligence." *Watson v. Meltzer*, 247 Or App 558, 565, 270 P3d 289 (2011), *rev den*, 352 Or 266 (2012) (citing *Harding v. Bell*, 265 Or 202, 205, 508 P2d 216 (1973)). The critical components at issue in defendant's cross-assignment of error are *breach* and *causation*—plaintiffs must show that Schwabe breached its professional duties to plaintiffs, and that but for that negligence, plaintiffs would not have entered into the Fortrend transaction, and would not have suffered transferee tax liability and other resulting damages. As relevant to breach, plaintiffs essentially contend that Schwabe knew or should have known that the proposed transaction carried significant risks but failed to identify or communicate that information prior to the close of the transaction. As relevant to causation, they allege that they would not have taken part in the transaction but for Schwabe's negligent advice.

We conclude that issue preclusion does not apply here, because the factual issues decided in the tax court litigation are not identical to those raised in plaintiffs' negligence claim against Schwabe. The tax court considered whether plaintiffs had constructive knowledge of whether the Fortrend transaction would leave MAC unable to pay its taxes, and the findings that were critical to that conclusion were what John Marshall and the remaining plaintiffs had been advised and what they themselves knew and appreciated. The court necessarily made factual findings about whether plaintiffs were privy to enough information regarding the transaction that a reasonable taxpayer in their position should have inquired further regarding whether the transaction would leave MAC unable to pay its taxes. The tax court's decision did *not* necessitate factual findings regarding the precise content of any warnings Schwabe provided to plaintiffs, or whether a reasonable attorney in Schwabe's position would have done more to inform or dissuade plaintiffs regarding their participation in the transaction. It was also not necessary for the tax court to make any findings regarding what role Schwabe's advice played in plaintiffs' decision to proceed with the transaction.

In contrast, such findings would be necessary to plaintiffs' negligence claim against Schwabe. The issues of ultimate fact that are necessarily relevant to plaintiffs' negligence claim against Schwabe are (1) Schwabe's specific actions and the precise content of its advice to plaintiffs regarding the Fortrend transaction, (2) what a reasonably competent attorney would have done in such circumstances to protect and defend plaintiffs' interests, and (3) if Schwabe's representation was indeed negligent, whether plaintiffs would have moved forward with the transaction but for Schwabe's negligence. Plaintiffs' negligence claim against Schwabe rises or falls based on those issues. None of the factual issues necessarily decided by the tax court answer those questions or allow for a conclusive determination as to whether or not Schwabe breached its duty of care to plaintiffs, causing damages.

We recognize that the tax court found certain facts that are, no doubt, unfavorable to plaintiffs' negligence claim, particularly with respect to advice and information John Marshall received from PwC about the transaction and its risks. However, that advice, while relevant to the causation element of their negligence claim, is not determinative of it. Whether plaintiffs had been warned about the transaction's risks by PwC does not, as a matter of law, foreclose liability on the part of Schwabe if it breached its duty to plaintiffs in its legal advice and that breach caused plaintiffs damages. This is especially so if the advice plaintiffs received from the two firms differed, or if Schwabe downplayed the severity of the risks, especially in light of Schwabe's role as plaintiffs' primary advisor in the transaction. Although we state no opinion on plaintiffs' likelihood of prevailing at trial on its negligence claim, plaintiffs' success at trial is nevertheless possible under these circumstances and is not precluded by the tax court's factual findings. Because the factual issues in the two proceedings are not identical, issue preclusion does not apply to bar plaintiffs' negligence claim against Schwabe.

In conclusion, we reverse and remand on plaintiffs' negligence claim for further proceedings. We conclude that the trial court erred in granting Schwabe's motion to

dismiss plaintiffs' negligence claim, because the statute of repose in ORS 12.115(1) does not apply to that claim, but did not err in denying Schwabe's motion to dismiss plaintiffs' negligence claim on issue preclusion grounds.

Reversed and remanded as to plaintiffs' negligence claim; otherwise affirmed.